UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DONALD C. MacPHERSON,
1104 NORTH SEA CO., INC., and
1110 NORTH SEA CO., INC.,

                                Plaintiffs,              **MEMORANDUM & ORDER**

    -against-                          08 CV 4113  (DRH) (MLO)

TOWN OF SOUTHAMPTON,
SOUTHAMPTON TOWN BOARD,
KAITLIN GRADY, DONALD KAUTH,
JOSEPH LOMBARDO and DOES 1-5,

                               Defendants.
------------------------------------------------------------X
**APPEARANCES:**

**PATRICIA A. WEISS, ESQ.**
Attorney for Plaintiffs
11 Rector Street
P.O. Box 751
Sag Harbor, New York 11963-0019
By: Patricia A. Weiss, Esq.

**NIXON PEABODY, LLP**
Attorney for Defendants
50 Jericho Quadrangle
Suite 300
Jericho, New York 11753
By: Michael Stewart Cohen, Esq.
    Christopher J. Porzio, Esq.

**HURLEY, Senior District Judge:**

      Plaintiffs Donald MacPherson ("MacPherson"), 1110 North Sea Co., Inc. ("1110 North

Sea"), and 1104 North Sea Co., Inc. ("1104 North Sea") (collectively, "Plaintiffs") filed the

present action against Town of Southampton (the "Town"), Southampton Town Board (the

"Town Board"), Kaitlin Grady ("Grady"), Donald Kauth ("Kauth"), and Joseph Lombardo

("Lombardo") (collectively, "Defendants") challenging Defendants' conduct in connection with

the enforcement of various ordinances concerning residential properties. The Complaint also alleges that Defendants retaliated against them because of MacPherson's exercise of his First Amendment rights. Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and (6). For the reasons set forth below, Defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND

The following facts are taken from the Complaint and are presumed true for purposes of this motion.

Plaintiffs each own residential property in the Town, where MacPherson is a part-time resident. Four properties are referred to in the Complaint: 1104 North Sea Road, 1106 North Sea Road, 1110 North Sea Road, and 1130 North Sea Road (the "North Sea Road properties"). The 1104 North Sea Road and 1110 North Sea Road properties are owned and operated by the 1104 North Sea and 1110 North Sea corporate entities. (Compl. ¶¶ 7, 8.) MacPherson is "associated" with all four properties "either as an owner, former owner, mortgagor, principal of the corporate owner, and/or consultant to the legal owner." (*Id.* ¶ 52.) Defendant Grady was one of the Town's zoning code enforcement officers and Defendant Kauth was one of the Town's senior code enforcement officers. Defendant Lombardo is one of the Town's attorneys.

## I. The Initial Action

On August 22, 2007, MacPherson, along with two of his corporate entities that are not parties here, commenced a separate action before this Court asserting claims under 42 U.S.C. § 1983 ("Section 1983") against the Town, the Town Board, and several individual defendants that

are not parties here (the "Initial Action").[1]  The claims asserted in the Initial Action are premised

upon the alleged unconstitutionality of the Town's seasonal rental permit law.  On August 28,

2007, approximately one week after MacPherson commenced the Initial Action, the Town and

Town Board "created a new Chapter 270 (Rental Properties) which was scheduled to become

effective 30 days later and would be enforced beginning January 1, 2008."  (Compl. ¶ 34.)  On

October 6, 2007, MacPherson filed an Amended Complaint in the Initial Action which

challenged the constitutionality of this newly promulgated seasonal rental permit law.

## II.  *The Alleged Retaliation*

Plaintiffs allege that shortly after the Amended Complaint was filed in the Initial Action,

Defendants began to engage in "a pattern of retaliation" against MacPherson.  (*Id.* ¶ 39.)

According to Plaintiffs, Defendants Grady and Kauth learned of the Initial Action when their co-

worker Stephen A. Frano, who was named as an individual defendant in the Initial Action, was

served with a summons and complaint.  (*Id.* ¶ 40-41).  Thereafter, as early as December 2, 2007,

Defendants Grady, Kauth, "and other enforcement officers employed by the Town . . . began a

series of repeated visits" to the North Sea Road properties and engaged in "a pattern of

intimidation of tenant-occupants" in order to "obtain judicial access" to these properties.  (*Id.* ¶¶

42, 46.)  Plaintiffs allege that the Town Board learned of these investigations and was aware of

MacPherson's association with the North Sea Road properties.  (*See id.* ¶ 52.)

In December 2007, after conducting searches of the North Sea Road properties, "GRADY

and the TOWN learned that certain individuals were living in the finished basement areas" of

---

[1]        The Justices of the Southampton Town Justice Court were also named as
defendants in the Initial Action.  The claims against them, however, were dismissed by
Memorandum and Order dated September 30, 2009.

these residences, despite the fact that the basement areas had not been approved for bedroom use. (*Id.* ¶¶ 49, 50.)  Although Plaintiffs took immediate steps to have those individuals vacate the North Sea Road properties (*id.* ¶ 53), the Town and Town Board commenced civil actions against Plaintiffs on March 31, 2008 in New York Supreme Court (the "State Court Actions"). (*See id.* ¶ 54.)

## III.    *The State Court Actions*

On March 31, 2008, the Town and Town Board (through Lombardo as a Town Attorney) "sought a temporary restraining order and preliminary injunction prohibiting the property owners and all others . . . from all future use and occupancy of the North Sea Road residences until the state civil action was determined . . . ." (*Id.* ¶ 55.)  According to the Complaint, the Town, Town Board, and Lombardo initially attempted to obtain the temporary restraining orders without providing Plaintiffs with "any meaningful notice and an opportunity to be heard." (*Id.* ¶¶ 57-58.) Ultimately, Plaintiffs allege that they were provided with "legally and constitutionally insufficient" notice – in the form of a telephone and facsimile message left after-hours at the office of one of Plaintiffs' attorneys – that "an Order To Show Cause would be presented for signature to a justice on the following day in Riverhead." (*Id.* ¶ 59.)

Plaintiffs allege that because they were not provided with proper notice of the State Court Actions, they did not appear to oppose the relief sought by the Town and Town Board. (*Id.* ¶ 63.)  Accordingly, on April 1, 2008, Acting New York State Supreme Court Justice Gary J. Weber issued three Orders to Show Cause why preliminary injunctions should not be granted pursuant to CPLR Article 63, the Town Law, and the Town Code that prohibited Plaintiffs from occupying or otherwise using the properties located at 1104, 1110, and 1130 North Sea Road (the

"Orders to Show Cause"). (*See* Decl. of Michael S. Cohen in Supp. of Mot. to Dismiss the

Compl., May 6, 2009 (the "Cohen Declaration"), Exs. C, E, G.) Justice Weber simultaneously

issued temporary restraining orders (the "TROs") that prohibited Plaintiffs from using or

occupying these three North Sea Road properties until Defendants' motions for preliminary

injunctions were decided. (*Id.*) Thereafter, on July 28, 2008, the TROs were extended by order

of New York State Supreme Court Justice Arthur G. Pitts (the "Extension Orders"). (*Id.*, Exs, D,

F, H; Compl. ¶ 64.)[2]

Plaintiffs allege that Defendants "deliberately and intentionally provid[ed] false

information to the state court"[3] and "utiliz[ed] and abus[ed] a New York State Rule of Civil

Procedure" in order to obtain the TROs. (*See* Compl. ¶ 65.) According to Plaintiffs, Defendants'

conduct constituted "the unlawful and unconstitutional seizure of Plaintiffs' property for a

serious and significant amount of time, . . . in a manner akin to a pre-judgment attachment of the

real property without any adequate prior notice and opportunity to be heard." (*Id.*) As a result,

the North Sea Road properties could not be rented or occupied during the spring, summer, or fall

of 2008 (even though such extended periods of non-occupancy violated the terms of the

properties' mortgage contracts), and were subject to vandalism and mold growth in the basement.

---

[2]     The Orders to Show Cause, TROs, and Extension Orders, which are attached as
Exhibits C through H to the Cohen Declaration, are properly before the Court on this motion to
dismiss as they are incorporated by reference in the Complaint. *See McCarthy v. Dun &
Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *Chambers v. Time Warner, Inc.*, 282 F.3d
147, 152-53 (2d. Cir. 2002).

[3]     Plaintiffs allege that Defendants provided false information regarding the number
of bedrooms permitted in the properties' certificates of occupancy, the condition of fireplaces
installed after the issuance of the certificates of occupancy, the approval for permits for certain
basement "build out" projects, and the absence of functioning smoke detectors. (Compl. ¶ 68.)

(*Id.* ¶ 66.)

On or about September 10, 2008, the Town allegedly "sent a slew of fire marshals[,] Code enforcement officers, police officers and a Building Inspector onto the properties without probable cause, without a search warrant and without consent of the property owners . . . ." (*Id.* ¶ 67.) Although Plaintiffs' counsel demanded that these Town employees vacate the premises, they refused because, according to Defendant Lombardo, "no one had a right to even be on the property at all." (*Id.*)

## IV.    *The Complaint*

The Complaint asserts eight causes of action. Count I seeks damages for alleged violations of Plaintiffs' Fourth and Fourteenth Amendment rights stemming from: (1) the September 10, 2008 incident (Compl. ¶ 72), and (2) Plaintiffs' allegation that "Defendants effectively 'seized' all use and occupancy of the real properties and all use [of] an income-generating property, through what is tantamount to an unconstitutional *ex parte* writ of attachment being sought by a municipality and granted by a state court judgement, without notice and opportunity to be heard." (*Id.* ¶ 73.)

Count II seeks damages for Defendants' alleged violation of Plaintiffs' First and Fourteenth Amendment rights by retaliating against MacPherson because he filed the Initial Action. (*Id.* ¶ 77.)

Count III seeks damages and declaratory relief based upon Defendants' alleged violation of Plaintiffs' Fifth and Fourteenth Amendment rights. In particular, Plaintiffs allege that Defendants violated their rights "to a fair administrative process and a fair criminal process," as well as Plaintiffs' procedural and substantive due process rights. (*Id.* ¶ 83). Plaintiffs further

allege that they "have been treated differently from other persons who are similarly situated in numerous respects." (*Id.* ¶ 84.)  Finally, Plaintiffs allege that "the manner in which Defendants have brought [ ] the TRO[s] and utilized the *ex parte* pre-judgement attachment process to deprive a homeowner [of] all use and occupancy of one's property is unconstitutional and could [affect] others if it is allowed to continue."  (*Id.* ¶ 85.)

Count IV alleges that Defendants violated Plaintiffs' Fourth, Fifth, and Fourteenth Amendment rights by intentionally and deliberately failing "to constitutionally fulfill investigative and administrative functions" and by failing to "provide accused[ individuals] such as Plaintiff MacPHERSON with fair trials by obtaining full and complete information from the TOWN's code enforcement officers."  (*Id.* ¶ 90.)  Plaintiffs allege that "the TOWN's attorneys act also as the TOWN's own prosecutors . . . and have gone virtually unchecked and unsupervised by the Suffolk County District Attorney in any meaningful way . . . ."  (*Id.* ¶ 89.) Plaintiffs assert that they are entitled to damages as a result of Defendants' deliberate actions that deprived them of notice and fair hearings and transgressed their property and liberty interests. (*Id.* ¶ 91.)  Similarly, Count V alleges that Defendants have violated Plaintiffs' Fourth, Fifth and Fourteenth Amendment rights by failing to "train and supervise their governmental employees not to violate civil rights of Plaintiffs and persons in Plaintiffs' situation."  (*Id.* ¶ 100.)  Plaintiffs seek damages for the resulting violations of their constitutional rights.

In Count VI, MacPherson alleges that he is "entitled to reimbursement for all legal expenses and costs which he incurred in connection with his legal defense of any Justice Court criminal prosecution and state court civil actions brought by the TOWN BOARD under the theory of common law indemnification."  (*Id.* ¶ 122.)

In Count VII, Plaintiffs seek a declaration that Chapter 270 of the Town's Rental Law is unconstitutional and unenforceable. (*Id.* ¶¶ 125, 126.) Plaintiffs also seek a declaration that the Town and Town Board violated the Constitution by using "New York State civil procedures for the purpose of seeking *ex parte* TROs and preliminary injunctions, without adequate notice to the property owner and a full and fair opportunity to be heard . . . ." (*Id.* ¶ 127.) Finally, Plaintiffs seek a declaration that the Town and Town Board's legislation and practice of "seizing all use of a residential property without providing for a full and fair post-seizure evidentiary hearing within 15 days" violates the Constitution. (*Id.* ¶ 128.)

Count VIII seeks various forms of injunctive relief that (1) requires Defendants to provide training to its code and law enforcement officers, (2) halts the Town's alleged practice of using the New York State Courts to issue TROs and preliminary injunctions without notice and a fair opportunity to be heard, (3) "stay[s] the pending civil actions against Plaintiffs in the state court and cancel[s] the TROs and preliminary injunctions in all such cases," and (4) requires Defendants to submit to monitoring by the New York State Attorney General's Office. (*Id.* ¶¶ 130-33.)

For the reasons indicated below, Defendants' motion to dismiss is granted in part and denied in part.

## DISCUSSION

### I. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Plaintiffs seek damages as well as declaratory and injunctive relief based upon Defendants' alleged violations of Plaintiffs' procedural and substantive due process rights. Defendants move to dismiss these claims pursuant to Rule 12(b)(1) on the ground that the Court

lacks subject matter jurisdiction over them. For the reasons discussed below, Defendants'

motion to dismiss Plaintiffs' due process claims is granted.

### A. *Legal Standard*

A case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule

12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it."

*Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "In contrast to the standard for a

motion to dismiss for failure to state a claim under Rule 12(b)(6), a 'plaintiff asserting subject

matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'"

*MacPherson v. State Street Bank & Trust Co.*, 452 F. Supp. 2d 133, 136 (E.D.N.Y. 2006)

(quoting *Makarova*, 201 F.3d at 113); *see also Tomaino v. United States*, 2010 WL 1005896, at

*1 (E.D.N.Y. Mar. 16, 2010).

### B. *Plaintiffs' Due Process Claims are Dismissed*

Throughout the Complaint, Plaintiffs allege that their due process rights were violated

because Defendants did not provide Plaintiffs with notice or an opportunity to be heard before

the TROs were issued by the New York Supreme Court. Specifically, in Count I, Plaintiffs seek

damages based upon Defendants' "seiz[ure]" of the North Sea Road properties "through what is

tantamount to an unconstitutional *ex parte* writ of attachment being sought by a municipality and

granted by a state court judgment, without notice and opportunity to be heard." (Compl. ¶ 73.)

Count III contains an allegation that "the manner in which Defendants have brought [ ] the TRO

. . . is unconstitutional . . . ." (*Id.* ¶ 85.) Finally, Count VIII seeks injunctive relief (1) prohibiting

the Town from using the New York State Courts to obtain TROs without providing notice and an

opportunity to be heard, and (2) cancelling the TROs issued in the pending State Court Actions

against Plaintiffs.  (*Id.* ¶¶ 131, 132.)

Defendants contend that these claims are barred by the *Rooker-Feldman* doctrine and "basic principles of comity and federalism."  (Defs.' Mem. at 5-9.)[4]

### 1.    The *Rooker-Feldman* Doctrine

*Rooker-Feldman* establishes the principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments.  *See Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005).  The doctrine evolved from the Supreme Court decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), which, taken together, stand for the principle that "lower federal courts lack jurisdiction to engage in appellate review of state-court determinations."  *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 21 (1987) (Brennan, J., concurring). The Supreme Court has explained that *Rooker-Feldman* "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting the district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

In this Circuit, courts must make four determinations before applying the doctrine.  *See Hoblock*, 422 F.3d at 84.  First, the federal court plaintiff must have lost in state court.  Second, the plaintiff must complain of injuries caused by a state-court judgment.  Third, the plaintiff must

---

[4]    "Defs.' Mem." refers to Defendants' Memorandum of Law in Support of Motion to Dismiss Complaint.  "Pls.' Opp'n" refers to Plaintiffs' Memorandum of Law in Opposition to Defendants' Rule 12(b) Motion to Dismiss the Complaint.  "Reply Mem." refers to Defendants' Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss Complaint.

invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced." *Id.* at 85. The first and fourth requirements are procedural, whereas the second and third are substantive. *Id.* If all four requirements are met, federal subject matter jurisdiction is barred by *Rooker-Feldman*.

a.    *The First and Fourth Elements*

With respect to the first requirement, Plaintiffs contend that the *Rooker-Feldman* doctrine is inapplicable to this case because the Defendants' motions seeking preliminary injunctions in the State Court Actions have not yet been decided. According to Plaintiffs, therefore, because "[t]here has not yet been an adverse state court 'judgment[]' rendered against Plaintiffs to date . . . Plaintiffs are not 'losers' in the state court litigation." (Pls.' Opp'n at 6.) Defendants respond that Plaintiffs' "position urges an overly restrictive interpretation of Rooker-Feldman, as that doctrine applies to insulate from federal district court review not only state court final judgments but also state court decisions and orders." (Reply Mem. at 1.)

Plaintiffs characterizes the *Rooker-Feldman* doctrine as applicable "to state court 'losers' who come to federal court for the first time after their state court cases have been fully adjudicated." (Pls.' Opp'n at 6.) The Court disagrees with this characterization of the law and finds that under the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction to review state court decisions whether final *or interlocutory* in nature." *Gentner v. Shulman*, 55 F.3d 87, 89 (2d Cir. 1995) (emphasis added); *see also Miller v. Cnty. of Nassau*, 467 F. Supp. 2d 308, 318 (E.D.N.Y. 2006) (same). Therefore, Plaintiffs "lost" in the State Court Actions when Justice Weber issued the TROs barring them from using or occupying the North Sea Road properties. *See Valdez v. Town of Brookhaven*, 2005 WL 3454708, at *6 (E.D.N.Y. Dec. 15, 2005) (finding

that "Plaintiffs who have been ousted pursuant to *ex parte* TROs clearly are the losers as the result of state court proceedings commenced by the Town").

Moreover, the fourth element is satisfied because the Complaint in this action was filed on October 8, 2008, which was after the TROs (and Extension Orders) were issued in the State Court Actions. (*See* Cohen Decl., Exs. C–H.)

b. *The Second and Third Elements*

"As to the second requirement, the Court must determine whether the injury complained of by Plaintiff[s] was caused by a state court judgment." *MacPherson*, 452 F. Supp. 2d at 138. The Complaint can be read to allege that Plaintiffs' injury (i.e., the deprivation of their property without due process of law) was caused by: (1) the state court's order granting the *ex parte* TROs without affording Plaintiffs an opportunity to appear (*see* Compl. ¶¶ 63, 64, 73); and (2) the manner in which Defendants obtained the *ex parte* TROs and Extension Orders (*see* Compl. ¶¶ 57-65, 73, 85, 127, 128, 131.) The Court will consider each alleged injury in turn, and will determine whether Plaintiffs invite the Court to review and reject the state court's determination to remedy such injury.

i. <u>The State Court's Orders</u>

At some points in the Complaint, Plaintiffs' alleged injury stems from the *ex parte* TROs and Extension Orders that were granted in the State Court Actions. For example, in Count VIII of the Complaint, Plaintiffs seek "a preliminary injunction staying the pending civil actions against Plaintiffs in the state court and canceling the TROs and preliminary injunctions in all such cases." (Compl. ¶ 132.) By seeking such relief, Plaintiffs explicitly ask the Court to "review and reject[ ] . . . the TROs [and Extension Orders] signed by state court judges on the

grounds that such orders were improperly issued without recognition of Plaintiffs' due process rights." *Valdez*, 2005 WL 3454708 at *2, 6 (plaintiffs sought a permanent injunction enjoining defendants from, *inter alia*, "engaging in any further 'no notice, no standards' evictions," as well as "a declaration that Defendants' action violate their due process, equal protection and Fair Housing Act rights," and compensatory and punitive damages, and attorneys fees).  This Court "clearly lacks jurisdiction [to grant such relief] pursuant to the classic articulation of the *Rooker-Feldman* doctrine . . . ." *MacPherson*, 452 F. Supp. 2d at 138; *see also Valdez*, 2005 WL 3454708 at *6 (finding second and third elements met when "Plaintiffs, in substance, seek a review and rejection of the TROs signed by state court judges on the grounds that such orders were improperly issued without recognition of Plaintiffs' due process rights").

### ii.    Defendants' Manner of Obtaining the TROs

Plaintiffs also allege that their injury (i.e., violations of their due process rights) was caused by the manner in which the Town and Town Board sought and obtained the TROs.  (*See* Compl. ¶¶ 57-65, 73, 85, 127, 128, 131.)  Plaintiffs rely on *Hachamovitch v. DeBuono*, 159 F.3d 687 (2d Cir. 1998) as support for this position.  (Pls.' Opp'n at 7.)  In *Hachamovitch*, the plaintiff, a physician whose license was suspended by state officials, brought a Section 1983 action alleging, *inter alia*, that the New York State Department of Health had implemented a regulatory scheme that "violated due process insofar as it . . . barred the reopening of [closed medical disciplinary] proceedings." *Hachamovitch*, 159 F.3d at 693.  The Second Circuit began its analysis by summarizing the Supreme Court's decision in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), which dealt with a challenge to "the validity of a rule of the District Columbia that prevented [the plaintiffs] from sitting for the District's bar exam."

13

*Hachamovitch*, 159 F.3d at 694 (citing *Feldman*, 460 U.S. at 476).  In examining the Supreme

Court's holding in *Feldman*, the Second Circuit explained:

> The Supreme Court drew a distinction – potentially critical in the present case – between a challenge to the rule governing bar admission and a challenge to a judgment of a state court applying that rule.  Because promulgation of a rule is a non-judicial act, a federal court would have jurisdiction over a general challenge to state bar rules.  By the same token, a federal court would lack jurisdiction over challenges to state court decisions in particular cases arising out of judicial proceedings, even if those challenges allege that the state court's action is unconstitutional.

*Id.* (citing *Feldman*, 460 U.S. at 485-86) (internal citations omitted).  Applying the rule in

*Feldman* to the case before it, the Second Circuit in *Hachamovitch* found that the plaintiff's

challenge to the Department of Health's regulatory scheme's failure to provide a mechanism for

reopening a closed medical disciplinary proceeding was "on the jurisdiction-favoring side of the

*Feldman* distinction between a challenge to the procedures as they exist and a challenge to

procedures as applied."  *Id.*  The *Hachamovitch* Court held that:

> [The plaintiff] frames his suit as a general challenge to a supposedly unconstitutional procedural defect: the absence of any mechanism for the reopening of a closed disciplinary proceeding in light of newly discovered evidence.  Such a claim attacks an alleged defect of state administration or legislation rather than adjudication; to use the terminology of *Feldman*, it is not a challenge to a judicial proceeding.

*Id.*

Here, Plaintiffs argue that they have alleged "state procedural flaws" similar to those set

forth in *Hachamovitch*, and that "Plaintiffs' allegations also pertain to other persons who fall

within that New York system of procedures . . . ."  (Pls.' Opp'n at 7.)  First, Plaintiffs allege that

Defendants obtained the *ex parte* TROs without providing Plaintiffs notice and an opportunity to

be heard.  Second, Plaintiffs allege that Defendants obtained the TROs by providing "stale

information" to the state court.  (Compl. ¶ 54.)  In reply, Defendants contend as follows:

> Unlike the due process claim arising out of the unavailability of any
> procedure for reopening a concluded physician disciplinary
> proceeding in <u>Hachamovitch</u>, which was presented "as a general
> challenge to a supposedly unconstitutional procedural defect,"
> plaintiffs here are complaining about defendants' use of the state
> court <u>ex parte</u> TRO system <u>as it was applied to them</u>, putting their
> claims squarely within the ambit of <u>Rooker-Feldman</u>.

(Reply Mem. at 2) (internal citation omitted).

After reviewing the allegations set forth in the Complaint, the Court finds this case to be

distinguishable from *Hachamovitch*.  Despite Plaintiffs' assertions in their opposition papers, the

factual allegations contained in the Complaint cannot be read as a constitutional challenge to the

procedural method by which Defendants obtained the TROs.  Rather, Plaintiffs have alleged that

the application of those procedures to Plaintiffs violated their constitutional rights.

First, Plaintiffs claim that Defendants did not provide them with constitutionally

sufficient notice before obtaining the TROs.  Specifically, Plaintiffs allege that when the Town,

Town Board, and Lombardo initially sought the TROs, Plaintiffs were provided "no notice at

all." (Compl. ¶ 58.)  When this effort was "rebuffed by the State Court Clerks," Defendants

allegedly "pretended to give some 'notice' but that 'notice' was legally and constitutionally

insufficient." (*Id.*)  Plaintiffs allege that although Defendants left an after-hours telephone and

facsimile message with an attorney representing Plaintiffs on an unrelated matter, Defendants

failed to contact either Plaintiffs' current attorney of record or MacPherson directly.  (*Id.* ¶ 59-

62.)  These factual allegations do not support a constitutional challenge to the overall procedure

by which a municipality may obtain an *ex parte* TRO.  Rather, they constitute an allegation that

the manner in which Defendants obtained the three TROs at issue in this litigation violated these particular Plaintiffs' constitutional rights.[5]  Thus, the holding of the *Hachamovitch* court is inapplicable here.  Moreover, a finding by this Court that Defendants' conduct violated Plaintiffs' due process rights would necessarily involve a review of the state court's determination that (1) no notice was required before the TROs could be issued and/or (2) the notice given to Plaintiffs by Defendants, as alleged in the Complaint, was constitutionally sufficient.  Such a review would be barred by the *Rooker-Feldman* doctrine.

Second, Plaintiffs assert that Defendants obtained the TROs by submitting "stale information" to the state court.  (Compl. ¶ 54.)  Although the Complaint does not make clear the exact nature of this "stale information," it appears to refer to allegations that the Town, Town Board, and Lombardo informed the state court that individuals were living in the basement areas of the North Sea Road properties (in violation of Town Code) even though Defendants were aware that Plaintiffs already removed those individuals from those residences by the time they sought the TROs.  (*See id.* ¶ 56.)  By taking this position, however, Plaintiffs essentially ask the Court to overturn the TROs and defer to Plaintiffs' assertions as to why the TROs were not necessary and should not have been issued by Justice Weber.  Moreover, Plaintiffs specifically presented this argument to Justice Pitts during the show cause hearing, and, based upon this argument, Justice Pitts made the decision to hold an evidentiary hearing and leave the TROs in

---

[5]     Plaintiffs contend in their opposition papers that the due process allegations in the Complaint "also pertain to other persons."  (*See* Pls.' Opp'n at 7.)  The Complaint contains only one, rather vague allegation to this effect.  (*See* Compl. ¶ 85 ("[T]he manner in which Defendants have brought [ ] the TRO and utilized the *ex parte* pre-judgment attachment process . . . is unconstitutional and could [affect] others if it is allowed to continue.").)  The Court finds that, despite this lone allegation, the Complaint as a whole contains only a challenge to the procedure for obtaining a TRO as applied to the named Plaintiffs.

place in the interim.  (*See* Cohen Decl., Exs. D, F, H at 3 ("In opposition to the application at bar the defendants argue that the tenants in the premises have moved out and as such there are no code violations which would require the relief the plaintiff is seeking.  Based upon the assertions of the defendant an evidentiary hearing is directed to be held before this Court to determine whether a preliminary injunction is warranted."))  Because these factual allegations evidence Plaintiffs' intent to challenge the application of the procedure by which Defendants obtained the *ex parte* TROs – and do not challenge the constitutionality of the procedure itself – the Court finds that the *Rooker-Feldman* doctrine bars it from reviewing the decisions made by Justices Weber and Pitts in the State Court Actions.[6]

### C.    *Conclusion*

For the reasons set forth above,[7] the following claims contained in the Complaint are barred by the *Rooker-Feldman* doctrine and must be dismissed: (1) Count I to the extent Plaintiffs seek damages pursuant to Section 1983 and the Fourteenth Amendment based upon Defendants' "seiz[ure]" of the North Sea Road properties."  (Compl. ¶ 73.)  *See Dockery v.*

---

[6]    Plaintiffs assert in their opposition papers that they "have been subjected to a continuing 'temporary restraining order' that is now in its <u>15th month</u> while the state court justice is still deciding the preliminary injunction matters . . . ." (Pls.' Opp'n at 7) (emphasis in the original).  This is essentially a challenge to the effect of the state court-ordered TROs on these particular Plaintiffs, not a constitutional challenge to the procedure by which those TROs may be obtained.  Thus, the *Rooker-Feldman* doctrine bars this Court from exercising jurisdiction over this issue.

[7]    Because Plaintiffs did not address Defendants' alternate argument that "Count VIII's demand for 'a preliminary injunction staying the pending civil actions against Plaintiffs in the state court' (Complaint at ¶ 132) runs afoul of the basic principles of comity and federalism" (Defs.' Mem. at 9), and because the Court finds dismissal of this portion of Count VIII to be appropriate under the *Rooker-Feldman* doctrine, the Court will not address Defendants' alternative argument.

*Cullen & Dykman*, 90 F. Supp. 2d 233, 236 (E.D.N.Y. 2000) ("Thus, plaintiff cannot avoid

dismissal of the complaint [pursuant to the *Rooker-Feldman* doctrine] by suggesting civil rights

violations."); *Fariello v. Campbell*, 860 F. Supp. 54, 65 (E.D.N.Y. 1994) ("[A] plaintiff may not

seek a reversal of a state court judgment simply by recasting his complaint in the form of a civil

rights action pursuant to 42 U.S.C. § 1983."); (2) Count III to the extent Plaintiffs seek a

declaration that "the manner in which Defendants have brought [ ] the TRO . . . is

unconstitutional . . . ." (Compl. ¶ 85)[8]; and (3) Count VIII to the extent Plaintiffs seek a

preliminary injunction (a) "halting the enforcement of the TOWN's manner of using the courts of

the State of New York to issue TROs and preliminary injunctions *pendente lite*, without

providing a full and fair opportunity . . . for the property owners to challenge and confront all of

the municipal witnesses . . . ." (*id.* ¶ 131), and (b) "staying the pending civil actions against

Plaintiffs in the state court and canceling the TROs and preliminary injunctions in all such cases"

(*id.* ¶ 132).

## II.     *Motion to Dismiss Plaintiffs' Remaining Claims Under 12(b)(6)*

Defendants contend that Counts II, IV, V, VI, VII, and the remaining portions of Counts

III and VIII should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which

relief can be granted.  The Court considers each of Defendants' arguments in turn.

### A.     *Legal Standard*

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Supreme Court has

---

[8]     Paragraphs 127 and 128 of Count VII of the Complaint, which seek corresponding declaratory relief, are also dismissed.

recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Twombly*, 550 U.S. at 561 (quoting *Conley*, 355 U.S. at 45-46). Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (internal citations, alteration and quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937 (2009), the Supreme Court provided further guidance, setting forth a two-pronged approach for courts deciding a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual assumptions." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must look to the allegations on the face of the complaint, but may also consider "[d]ocuments that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007); *see also Gillingham v. GEICO Direct*, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008) (noting that a court considering a motion to dismiss "must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint") (citation and internal quotation marks omitted).

Defendants advance several arguments as to why Plaintiffs' remaining claims should be dismissed. The Court will address Defendants' arguments in turn.

**B.** ***Plaintiffs' Retaliation Claims are Dismissed***

Plaintiffs contend that this action "was prompted by Defendants' conduct" following the commencement of the Initial Action. (Pls.' Opp'n at 8.) According to Plaintiffs, the Complaint in this action contains "a substantial First Amendment retaliation claim, which describes

retaliatory state court litigation that the Town of Southampton and its Town Board commenced after the [Initial Action] was underway."  (*Id.*)

1.      **Legal Standard**

"In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws." *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000).  In particular, "[t]he Second Circuit has recognized that 'a claim for relief may be stated under section 1983 if otherwise routine administrative decisions are made in retaliation for the exercise of constitutionally protected rights.'" *Chernoff v. City of New York*, 2009 WL 816474, at *5 (E.D.N.Y. Mar. 26, 2009) (quoting *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987)).  To establish a *prima facie* case of retaliation under Section 1983, a plaintiff must demonstrate that: "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right."  *Kuck v. Danaher*, 600 F.3d 159, 168 (2d Cir. 2010) (quoting *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)); *Butler v. City of Batavia*, 2009 WL 910194, at *1 (2d Cir. Apr. 6, 2009) (same); *Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir. 1998) (same).[9]

In order to survive a motion to dismiss, a claim of retaliation under Section 1983 "must be 'supported by specific and detailed factual allegations,' not stated 'in wholly conclusory

---

[9]      The Second Circuit has "described the elements of a First Amendment retaliation claim in several ways depending on the factual context." *Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008).  The elements set forth in *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001), apply to suits, such as this one, brought by private citizens against public officials. *See Williams*, 535 F.3d at 76 (comparing the *Curley* standard with the *prima facie* requirements in cases brought by public employees and those brought in the "prison context").

terms.'" *Friedl*, 210 F.3d at 85-86 (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *see also Eberling v. Town of Tuxedo*, 2006 WL 278246, at *2 (S.D.N.Y. Feb. 3, 2006) (same).

## 2. MacPherson Has Adequately Alleged Protected Activity

The parties appear to assume (*see* Compl. ¶ 77; Defs.' Mem. at 10), and the Court finds, that Plaintiffs have adequately alleged that MacPherson[10] engaged in activity protected by the First Amendment by commencing the Initial Action. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002) ("The rights to complain to public officials and to seek administrative and judicial relief from their actions are protected by the First Amendment."); *Rosendale v. Brusie*, 2009 WL 778418, at *8 (S.D.N.Y. Mar. 25, 2009) (finding plaintiff engaged in "First Amendment-protected activity" by, *inter alia*, commencing federal and state actions).

## 3. MacPherson Has Not Alleged Any Chilling Effect on His Speech

An essential element of a Section 1983 claim, including a claim of retaliation in violation of the First Amendment, is that "some official action has caused the plaintiff to be deprived of his or her constitutional rights – in other words, there is an injury requirement to state the claim." *Williams v. Town of Greenburgh*, 535 F.3d 71, 78 (2d Cir. 2008) (quoting *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002)) (internal quotation marks omitted). The Second Circuit has "explained that plaintiffs who allege a violation of their right to free speech must

---

[10] As Defendants point out, 1104 North Sea Co., Inc. and 1110 North Sea Co., Inc. were not named plaintiffs in the Initial Action and, therefore, cannot claim they engaged in protected activity by filing that lawsuit. (*See* Cohen Decl., Ex. B.) The Complaint does not contain any allegations that 1104 North Sea Co., Inc. and 1110 North Sea Co., Inc. engaged in activity protected under the First Amendment.

prove that official conduct actually deprived them of that right." *Id.* (citing *Colombo*, 310 F.3d at 117). Therefore, "to properly allege a claim for First Amendment retaliation, a plaintiff must show that his First Amendment rights were 'actually chilled.'" *Balaber-Strauss v. Town/Vill. of Harrison*, 405 F. Supp. 2d 427, 433 (S.D.N.Y. 2005) (quoting *Curley*, 268 F.3d at 73) (internal quotation marks omitted).

Here, MacPherson has not alleged that any of Defendants' conduct actually chilled the exercise of his First Amendment rights. Although Plaintiffs allege that "[t]he Rental Law operates as a prior restraint of Plaintiffs' protected right of speech" (Compl. ¶ 78), the Complaint does not contain any allegations that Defendants' actions deprived MacPherson of his rights under the First Amendment. Plaintiffs' opposition papers state that Defendants' procurement of the TROs, as well as Defendants' subsequent attempt to discourage Justice Pitts from "holding any evidentiary hearing so that the Plaintiffs here could challenge the statements in the submitted affidavits" in support of the TROs, "were intended to chill – and did in fact chill – the exercise of all Plaintiffs' constitutionally protected rights." (Pls.' Opp'n at 9.) In fact, MacPherson, through his counsel, appeared before Justice Pitts to oppose the extension of the TROs in the State Court Actions and has vigorously litigated not only the instant action, but also the Initial Action before this Court. *See Rosendale*, 2009 WL 778418 at *11 (finding insufficient allegations of First Amendment retaliation when Complaint alleged that plaintiff continued to speak out against defendants' failure to enforce zoning regulations, brought a state court action, and commenced a federal action). The Court finds, therefore, that the Complaint does not contain any factual allegations setting forth specific instances in which MacPherson "desired to exercise [his] First Amendment rights but was chilled by" Defendants' alleged conduct. *Mangano v. Cambariere*,

2007 WL 2846418, at *2 (S.D.N.Y. Sept. 27, 2007); *see also Balaber-Strauss*, 405 F. Supp. 2d at

433 ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific

present objective harm or a threat of specific future harm.") (quoting *Curley*, 268 F.3d at 73)

(internal quotation marks omitted).

Accordingly, because MacPherson has not alleged that his "speech was either silenced or

chilled – *i.e.*, that his right to speech was actually violated," MacPherson's First Amendment

retaliation claim fails as a matter of law. *See Williams*, 535 F.3d at 78; *see also Kuck*, 600 F.3d

at 168 (finding plaintiff's First Amendment retaliation claim was properly dismissed when

"nothing in the complaint suggests that [plaintiff's] speech was 'actually chilled' as a result of"

defendants' alleged conduct); *Curley*, 268 F.3d at 73 ("Where a party can show no change in his

behavior, he has quite plainly shown no chilling of his First Amendment right to free speech.");

*Rosendale*, 2009 WL 778418, at *11 ("Because the Complaint shows that Plaintiff continued to

exercise his First Amendment rights despite Defendants' alleged retaliatory conduct, Plaintiff

fails to allege actual chilling of his speech."); *Balaber-Strauss*, 405 F. Supp. 2d at 433

(dismissing First Amendment retaliation claim when Complaint failed to allege that plaintiff

refrained from speaking at the public Town meeting after defendants engaged in "smear

campaign"); *Ford v. Reynolds*, 326 F. Supp. 2d 392, 403 (E.D.N.Y. 2004) ("Because Plaintiffs

have failed to allege any actual chill or deterrence, this Court must conclude that [plaintiffs] did

not suffer the harm necessary to support their retaliation claim."). Therefore, Count II of the

Complaint is dismissed.[11]

---

[11] Because MacPherson has failed to allege that his First Amendment rights have actually been chilled, the Court need not address the parties' extensive arguments regarding the existence of a causal link between MacPherson's protected activity and Defendants' conduct.

C.    **Plaintiffs' Equal Protection Claims Are Dismissed**

The Complaint alleges that "[a]s a result of the aforesaid Defendants' bad faith motives, and through those Defendants' conjoined, conspiratorial conduct, Plaintiffs have been treated differently from other persons who are similarly situated in numerous respects . . . ." (Compl. ¶ 84.) First, Plaintiffs allege that Defendants "targeted" MacPherson and commenced the State Court Actions against him because he "frequently rented out his residential properties to those individuals whom Defendants have unlawfully discriminated against in violation of the Equal Protection Clause." (*Id.*) Second, Plaintiffs contend that Defendants, including at least one of the Town's councilmembers, issued press releases and made statements to the media with the intention of "portray[ing] MacPHERSON in a derogatory and false manner and as a 'slum landlord' in order to cover up their own misdeeds, thus demonstrating malice and ill will and spite." (*Id.*) Finally, Plaintiffs allege that Lombardo made "derogatory statements" regarding Plaintiffs to the press. (*Id.*)

1.    <u>Legal Standard</u>

To state a claim for an equal protection claim based upon selective enforcement of the law, Plaintiffs must plead that: "(1) they were 'treated differently from other similarly situated' individuals and (2) this 'differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Butler*, 2009 WL 910194, at *1 (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007)); *Mattison v. Black Point Beach Club Ass'n*, 2010 WL 1838705, at *1 (2d Cir. May 10, 2010) (summary order).

In the alternative, "failing proof of selective treatment based on impermissible

considerations," Plaintiffs must plead a "class of one" equal protection claim.  *See Everitt v. DeMarco*, 2010 WL 1286940, at *10 (D.Conn. Mar. 30, 2010).  "The Supreme Court has 'recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 58 (2d Cir. 2010) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

"[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves."  *Ruston*, 610 F.3d at 59 (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)) (internal quotation marks and alteration omitted).  "Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake."  *Id.* at 59-60 (quoting *Clubside, Inc.*, 468 F.3d at 159) (internal quotation marks omitted).

### 2.     Plaintiffs Have Failed to Allege That Similarly Situated Individuals or Entities Were Treated Differently

Defendants contend that the "Complaint is devoid of factual allegations from which it could reasonably be inferred that any of these plaintiffs have been treated differently from similarly situated persons."  (Defs.' Opp'n at 19.)  In fact, as Defendants point out, the Complaint does not identify any comparators or similarly situated entities at all.  (*See id.*)  For this reason,

Plaintiffs' equal protection claim – whether pled as a selective enforcement claim or a class-of-one claim – is deficient as matter of law. *See Ruston*, 610 F.3d at 60 (dismissing equal protection claim when plaintiffs failed to allege "that properties sufficiently similar to theirs were treated more favorably" by defendants); *Cassidy v. Scoppetta*, 365 F. Supp. 2d 283, 290-91 (E.D.N.Y. 2005) (finding plaintiffs "failed to allege the most fundamental aspect of an equal protection claim" when they did not compare themselves to similarly situated individuals); *Izzo v. City of Syracuse*, 2000 WL 1222014, at *5 (N.D.N.Y. Aug. 3, 2000), *aff'd*, 11 Fed. Appx 31 (2d Cir. June 8, 2001) (holding that plaintiff failed to plead selective enforcement claim when the "pleadings do not contain *any* references to other landlords, similarly situated, who were not, in fact, fined by the City"). Therefore, to the extent that Count III contains an equal protection claim (Compl. ¶ 84), that claim is dismissed.[12]

### D. *Plaintiffs' Claim Based Upon Common Law Indemnification Is Dismissed*

Plaintiffs allege that MacPherson is "entitled to reimbursement for all legal expenses and costs which he incurred in connection with his legal defense of any [Town] Justice Court criminal prosecution and state court civil actions brought by the TOWN BOARD under the theory of common law indemnification." (Compl. ¶ 122, 113.) According to Plaintiffs, the Town and Town Board "did not fulfill their duties to provide justice for Plaintiffs." (*Id.* at ¶ 119.) Plaintiffs argue that "the Town has taxed real property while prohibiting its use through an unconstitutional procedure." (Pls.' Opp'n at 15.) As such, Plaintiffs allege that it became necessary for MacPherson "to pay for certain expenses associated with investigation and

---

[12] Plaintiffs' request for leave to amend their equal protection claim in the event of that claim's dismissal (*see* Pls.' Opp'n at 14) is addressed in Section III.A, *infra*.

presentation of facts to the Court . . . ." (Compl. ¶ 121.)

"Under New York law, the common law right to indemnification 'arises when one party is compelled to pay for the wrong of another.'" *Fagan v. AmerisourceBergen Corp.*, 356 F. Supp. 2d 198, 221 (E.D.N.Y. 2004) (quoting *Mallouris v. Re Spec Corp.*, 2003 WL 22966287, at *2 (S.D.N.Y. Dec. 15, 2003)). "Accordingly, the common law right to indemnification arises only where a party's liability is based upon the wrongdoing of the party from whom indemnification is sought." *Id.* (citing *Mallouris*, 2003 WL 22966287 at *2). As currently framed, Count VI does not state a cognizable claim for relief under a theory of common law indemnification. Accordingly, Count VI of the Complaint is dismissed.

### E. *Plaintiffs' Claims Based Upon Violations of the Due Process Clause of the Fifth Amendment Are Dismissed*

To the extent that Counts III, IV, and V of the Complaint contain causes of action based upon Defendants' alleged deprivation of Plaintiffs' due process rights under the Fifth Amendment, those claims must be dismissed because Plaintiffs "have not named the United States government or any agency or employee thereof as a defendant in this matter." *Cassidy*, 365 F. Supp. 2d at 286; *see also Balaber-Strauss,* 405 F. Supp. 2d at 434-35 (same). "The Fifth Amendment 'governs the conduct of the *federal* government and *federal* employees, and does not regulate the activities of state officials or state actors.'" *Cassidy*, 365 F. Supp. 2d at 286 (quoting *Dawkins v. City of Utica*, 1997 WL 176328, at *4 (N.D.N.Y. Apr. 4, 1997)). Accordingly, to the extent that Counts III, IV, and V seek relief based upon alleged violations of Plaintiffs' Fifth Amendment due process rights, those claims are dismissed. *See Guadagni v. New York City Transit Auth.*, 2009 WL 1910953, at *7 (E.D.N.Y. June 30, 2009) ("The right to due process

guaranteed by the Fifth Amendment, however, applies only with regard to the federal

government . . . .").

**F.**     ***Defendants' Motion to Dismiss Certain of Plaintiffs' Claims as Duplicative is Granted in Part***

Defendants contend that Counts IV and V as well portions of Counts III and VII should

be dismissed as duplicative of the claims filed by MacPherson in the Initial Action.

"As part of its general power to administer its docket, a district court may stay or dismiss

a suit that is duplicative of another federal court suit." *Curtis v. Citibank*, 226 F.3d 133, 138 (2d

Cir. 2000) (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817

(1976)). "The complex problems that can arise from multiple federal filings do not lend

themselves to a rigid test, but require instead that the district court consider the equities of the

situation when exercising its discretion." *Id.* "[T]hough no precise rule has evolved, the general

principle is to avoid duplicative litigation." *James v. AT&T Corp.*, 334 F. Supp. 2d 410, 411

(S.D.N.Y. 2004) (quoting *Colo. River Water Conservation Dist.*, 424 U.S. at 817) (internal

alteration and quotation marks omitted). "Dismissal of duplicative actions, however, is not

appropriate for claims that bear only a 'rough resemblance' between each other." *Flemming v.

Wurzberger*, 322 Fed. Appx 69, 71 (2d Cir. Apr. 16, 2009) (quoting *Curtis*, 226 F.3d at 136).

For the reasons set forth below, the Court finds that while certain portions of Count IV

are duplicative of claims filed in the Initial Action, the remainder of Count IV and Count V

should not be dismissed as duplicative. Because Defendants have not addressed whether these

claims should be dismissed on the merits, Defendants will be given an opportunity to do so, as

set forth below.

### 1.    Count IV is Dismissed in Part

Defendants contend that Counts IV and V of the Complaint in this action are "virtually identical to Counts IV and V asserted by [MacPherson] in the Initial Action, and should be dismissed as duplicative."  (Defs.' Mem. at 23-24.)

With respect to Count IV, the Court agrees that Paragraphs 86 through 95 appear to have been copied verbatim from the complaint in the Initial Action, in which the Town and Town Board are also named as Defendants.  (*Compare* Compl. ¶¶ 86-95, *with* Cohen Decl., Ex. B ¶¶ 94-104.)  Accordingly, these allegations are dismissed as duplicative.  Count IV also contains, however, two additional allegations not present in the Initial Action.  Specifically, Plaintiffs allege a due process violation based upon Defendants' use of the same Town Attorney (presumably, Lombardo) to prosecute MacPherson in the Southampton Town Justice Court and to pursue the State Court Actions against Plaintiffs.  (Compl. ¶ 96.)  According to Plaintiffs, the Town Attorney has "claimed an 'attorney-client' privilege with the TOWN's official and employees and refused to provide documents during the discovery process on that basis."  (*Id.*) Plaintiffs allege that their due process rights have been further violated by Defendants' "fail[ure] to fulfill their investigative and administrative functions by adequately reviewing the TOWN's Building Department files before requesting search warrant[s] and making specious false statements in court papers."  (*Id.* ¶ 97.)  Defendants have not addressed the viability of these allegations as part of their motion to dismiss and the Court declines to dismiss these allegations at this time.

### 2.    Count V is Not Dismissed

While some of the language in Count V of the Complaint appears to have been taken

from the complaint filed in the Initial Action, there are significant differences between the two

pleadings. (*Compare* Compl. ¶¶ 99-111, *with* Cohen Decl., Ex. B ¶¶ 105-16.) Defendants argue

that Count V, which alleges a violation of Plaintiffs' Fourth and Fourteenth Amendment rights

based upon the Town and Town Board's "deliberate[ ] and intentional[ ] failure to train and

supervise their governmental employees not to violate civil rights of Plaintiffs . . . ." (Compl. ¶

100), "pertain[s] to the processes by which <u>criminal</u> matters are prosecuted in the Town's Justice

Court." (Defs.' Mem. at 23.) According to Defendants, the "corporate plaintiffs here do not

allege they were subjected to the Town's Justice [Criminal] Court system," and MacPherson has

already set forth identical allegations in the Initial Action. (*Id.* at 23-24.) The Court finds,

however, that, while somewhat repetitive of the allegations made in the Initial Action, Count V

also alleges different civil rights violations stemming from the Town and Town Board's failure

to adequately train "individuals who are involved in code enforcement matters." (*See* Compl. ¶¶

105, 107c, 109.) Defendants have not addressed the legal sufficiency of the allegations contained

in Count V. Accordingly, the Court declines to dismiss Count V, or Paragraph 130 of Count VII

of the Complaint (which seeks corresponding injunctive relief), at this time.[13]

### 3. <u>Paragraph 83 of Count III of the Complaint is Dismissed</u>

Defendants assert that Paragraph 83 of Count III of the Complaint, which alleges

"violations of plaintiffs' right to 'fair criminal process,'" have "been lifted wholesale from the

Initial Action, [and] are entirely irrelevant to this action, which relates to the civil enforcement of

other Town Code provisions." (Defs.' Mem. at 24 (quoting Compl. ¶ 83).) The Court finds that

---

[13]     As noted in Section II.E, *supra*, to the extent that the remaining portions of Count IV and Count V attempt to assert claims based upon a violation of Plaintiffs' Fifth Amendment due process rights, those claims are dismissed.

Paragraph 83 of the Complaint has been copied, almost verbatim, from the complaint filed in the Initial Action. (*Compare* Compl. ¶ 83, *with* Cohen Decl., Ex. B ¶ 91.) The only new allegation present in Paragraph 83 of the Complaint is that Defendants violated Plaintiffs' due process rights by failing to provide them with "a curative period in which to address and remedy any perceived violation of the State's or TOWN's fire, safety, health or property maintenance laws." (Compl. ¶ 83.) The Court finds, however, that Plaintiffs have not set forth sufficient facts to support an allegation of a due process violation on this basis and, to the extent Plaintiffs are challenging the TROs, such a claim would be barred by the *Rooker-Feldman* doctrine for the reasons described above. Accordingly, Paragraph 83 of Count III of the Complaint is dismissed.

### 4. Paragraphs 125 and 126 of Count VII of the Complaint Are Dismissed

Count VII seeks, *inter alia*, a declaration that Chapter 270 of the Town's rental permit law is "unconstitutional on its face and as written and as being applied . . . ." (Compl. ¶¶ 125, 126.) Defendants contend that "Plaintiff MacPherson admits, however, that he is already challenging the constitutionality of that law in the Initial Action[ ], and so this aspect of Count VII is clearly duplicative of claims advanced in the Initial Action." (Defs.' Mem. at 24 (citing Compl. ¶¶ 37, 38).) The Court agrees that MacPherson has raised an identical constitutional challenge to this rental law in the Initial Action. (*Compare* Compl. ¶¶ 125-26, *with* Cohen Decl., Ex. B ¶¶ 129-30.) Furthermore, because the corporate Plaintiffs in this action have never alleged that they were denied a rental permit pursuant to the provisions of that rental law, they would lack standing to challenge its constitutionality in any event. *See Palmieri v. Town of Babylon*, 2006 WL 1155162, at *6 (E.D.N.Y. Jan. 6, 2006) (finding plaintiff lacked standing to assert due process challenge to rental permit law when he had never applied for a rental permit).

Accordingly, Paragraphs 125 and 126 of Count VII of the Complaint are dismissed as duplicative.

**G.      *Remaining Fourth Amendment Claim Not Addressed by Defendants***

Count I of the Complaint also contains an allegation that Defendants violated Plaintiffs' Fourth Amendment rights when the "TOWN and its employees came onto Plaintiffs' properties on or about September 10, 2008 and 'searched' without probable cause and without a search warrant and without consent to go on the property." (Compl. ¶ 72.) Defendants have not addressed this claim as part of their motion to dismiss, and the Court declines to dismiss it *sua sponte.* Should Defendants wish to move to dismiss this claim, they will be given an opportunity to do so, as set forth below.

**III.    *Plaintiffs' Request for Leave to Amend the Complaint is Granted***

**A.      *Plaintiffs' Request for Leave to Amend the Equal Protection Claim is Granted to a Limited Extent***

Plaintiffs request leave to amend their equal protection claim in the event that Defendants' motion is granted. (Pls.' Opp'n at 14.) In addition, Plaintiffs request that the Court require Defendants "to permit Plaintiffs' inspection [of] their criminal and civil prosecution files, so that Plaintiffs can state their amended claims with greater precision." (*Id.*) Plaintiffs cite *A.B.C. Home Furnishing v. Town of East Hampton*, 947 F. Supp. 635 (E.D.N.Y. Dec. 14, 1996) as support for this request. (*See* Pls.' Opp'n at 14.)[14] In that case, the plaintiff brought an action under Section 1983 asserting various constitutional violations after the defendant town revoked

---

[14]      Plaintiffs provide a citation to a subsequent decision issued by the court in *A.B.C. Home Furnishing*. (*See* Pls.' Opp'n at 14.) The citation listed above is the *A.B.C. Home Furnishing* court's decision permitting the plaintiff to amend its equal protection claim.

the plaintiff's permit to hold a tent sale. *See A.B.C. Home Furnishing*, 947 F. Supp. at 640. All of the plaintiff's claims were dismissed except for its equal protection claim, which the plaintiff was granted leave to replead. *Id.* at 647. Plaintiffs assert that the court in *A.B.C. Home Furnishing* "allowed [the plaintiff] sufficient time to obtain all of the [defendant] Town's records on the permits granted and denied, so as to demonstrate that [the plaintiff] was similarly situated [and] treated differently." (Pls' Opp'n at 14.) After reviewing the court's decision in *A.B.C. Home Furnishing*, however, the Court finds no mention of any intention to allow the plaintiff time to review the defendant's records. *See A.B.C. Home Furnishing*, 947 F. Supp. at 647 ("If the plaintiff is able to allege that similarly situated entities were treated differently, naming such entities, and that it was treated differently as a result of malice, bad faith or intentional discrimination, ABC could allege an equal protection claim sufficient to pass Rule 12(b)(6) muster."). Therefore, the Court declines to order Defendants to produce any documents for inspection at this time. However, Plaintiffs' request for permission to amend their equal protection claim is granted.

**B.** *Plaintiffs' Request for Leave to Amend the Remainder of the Complaint is Granted*

In addition to Plaintiffs' specific request to amend their equal protection claim, discussed above, Plaintiffs' opposition papers contain a general request for "an opportunity to amend their pleading as Rule 15 permits, in the event that the Court finds anything lacking." (Pls.' Opp'n at 5.) While the Court is skeptical that Plaintiffs can cure the deficiencies in certain of their claims, the Court finds it would not be futile to permit Plaintiffs the opportunity to amend other portions of their pleading. Given that, as well as the fact that in this Memorandum and Order the Court

has relied upon case law and arguments not advanced by the parties, Plaintiffs' request is granted. Plaintiffs are cautioned, however, that any amendment is subject to scrutiny under Rule 11.

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint is GRANTED in part and DENIED in part. Defendants' motion is GRANTED to the extent that: (1) Counts II, III, VI, and VII are dismissed in their entirety; and (2) Counts I, IV, V, and VIII are dismissed in part, as described above. In all other respects, Defendants' motion is DENIED.

Should Defendants wish to move to dismiss the Fourth Amendment claim contained in Count I of the Complaint, or the claims not previously addressed on the merits in Counts IV and V, they should so advise the Court, via letter to be filed on or before November 1, 2010, so the Court may set a briefing schedule.

Plaintiffs shall advise the Court, via letter filed on or before November 1, 2010, whether or not they intend to move for leave to amend the Complaint, so the Court may set a briefing schedule.


**SO ORDERED.**

Dated: Central Islip, New York
          September 7, 2010                              _____/s/_____
                                                        Denis R. Hurley
                                                        Unites States District Judge