UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
DONALD C. MacPHERSON,
1104 NORTH SEA CO., INC., and
1110 NORTH SEA CO., INC.,

                                  Plaintiffs,          **MEMORANDUM & ORDER**

          -against-                                     08 CV 4113  (DRH) (ARL)

TOWN OF SOUTHAMPTON,
SOUTHAMPTON TOWN BOARD,
KAITLIN GRADY, DONALD KAUTH,
JOSEPH LOMBARDO and DOES 1-5,

                                  Defendants.
-----------------------------------------------------------X
**APPEARANCES:**

**PATRICIA A. WEISS, ESQ.**
Attorney for Plaintiffs
Sag Harbor Shopping Cove
78 Main Street, Suite 14
P.O. Box 751
Sag Harbor, New York 11963-0019
By:     Patricia A. Weiss, Esq.

**NIXON PEABODY, LLP**
Attorney for Defendants
50 Jericho Quadrangle
Suite 300
Jericho, New York 11753
By:     Michael Stewart Cohen, Esq.


**HURLEY, Senior District Judge:**

        Plaintiffs Donald MacPherson ("MacPherson"), 1104 North Sea Co., Inc. ("1104 North

Sea"), and 1110 North Sea Co., Inc. ("1110 North Sea") (collectively, "plaintiffs") commenced

the present action against Town of Southampton (the "Town"), Southampton Town Board (the

"Town Board"), Kaitlin Grady ("Grady"), Donald Kauth ("Kauth"), and Joseph Lombardo

("Lombardo") (collectively, "defendants") challenging defendants' conduct in connection with the enforcement of various ordinances concerning residential rental properties and alleging that defendants retaliated against them because of MacPherson's exercise of his First Amendment rights. By Memorandum & Order dated September 7, 2010 ("September 2010 Decision"), the Court dismissed a large portion of the original Complaint but granted plaintiffs leave to re-plead. The Amended Complaint was filed on December 7, 2010. Presently before the Court is defendants' motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and (6). For the reasons set forth below, defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND

The following facts are taken from the Amended Complaint and are presumed true for purposes of this motion.

Plaintiffs each own residential property in the Town, where MacPherson is a part-time resident. Four properties are referred to in the Complaint: 1104 North Sea Road, 1106 North Sea Road, 1110 North Sea Road, and 1130 North Sea Road (the "North Sea Road properties"). The 1104 North Sea Road and 1110 North Sea Road properties are owned and operated by the 1104 North Sea and 1110 North Sea corporate entities. MacPherson is "associated" with all four properties "either as an owner, former owner, mortgagor, principal of the corporate owner, and/or consultant to the legal owner." (Am. Compl. ¶ 52.) Grady was one of the Town's zoning code enforcement officers and Kauth is one of the Town's senior zoning code enforcement officers. Lombardo is one of the Town's attorneys.

## I.    The Initial Action

On August 22, 2007, MacPherson, along with two of his corporate entities that are not parties here, commenced a separate action before this Court, under docket number CV 07-3497, asserting claims under 42 U.S.C. § 1983 ("Section 1983") against the Town, the Town Board, and Stephen A. Frano, an individual that is not a party here (the "Initial Action").[1]  The claims asserted in the Initial Action are premised upon the alleged unconstitutionality of the Town's seasonal rental permit law.  On August 28, 2007, approximately one week after MacPherson commenced the Initial Action, the Town and Town Board "created a new Chapter 270 (Rental Properties) which was scheduled to become effective 30 days later and would be enforced beginning January 1, 2008." (*Id.* ¶ 34.)  On October 6, 2007, MacPherson filed an amended complaint in the Initial Action that challenged the constitutionality of this newly promulgated seasonal rental permit law.

## II.    The Alleged Retaliation

Plaintiffs allege that shortly after the amended complaint was filed in the Initial Action, defendants began to engage in "a pattern of retaliation" against MacPherson. (*Id.* ¶ 39.)  According to plaintiffs, Grady and Kauth learned of the Initial Action when their co-worker Frano was served with a summons and complaint. (*Id.* ¶ 40-41.)  Thereafter, as early as December 2, 2007, Defendants Grady, Kauth, "and other enforcement officers employed by the [Town] began a series of repeated visits" to the North Sea Road properties and engaged in "a pattern of intimidation of tenant-occupants" in order to "obtain judicial access" to these

---

[1]    The Justices of the Southampton Town Justice Court were also named as defendants in the Initial Action.  The claims against them, however, were dismissed by Memorandum and Order dated September 30, 2009.

properties. (*Id.* ¶¶ 42, 46.) Plaintiffs allege that the Town Board learned of these investigations and was aware of MacPherson's association with the North Sea Road properties. (*See id.* ¶ 52.)

In December 2007, after conducting searches of the North Sea Road properties pursuant to search warrants, "GRADY and the TOWN learned that certain individuals were living in the finished basement areas" of these residences despite the fact that the basement areas had not been approved for bedroom use. (*Id.* ¶¶ 49, 50.) Although plaintiffs took immediate steps to have those individuals vacate the North Sea Road properties (*id.* ¶ 53), the Town and Town Board commenced civil actions against plaintiffs on March 31, 2008 in New York Supreme Court (the "State Court Actions"). (*See id.* ¶ 54.)

### III. *The State Court Actions*

On March 31, 2008, the Town and Town Board (through Lombardo as a Town Attorney) "sought a temporary restraining order and preliminary injunction prohibiting the property owners and all others . . . from all future use and occupancy of the North Sea Road residences until the state civil action was determined . . . ." (*Id.* ¶ 55.) According to the Amended Complaint, the Town, Town Board, and Lombardo initially attempted to obtain the temporary restraining orders without providing plaintiffs with "any meaningful notice and an opportunity to be heard." (*Id.* ¶¶ 57-58.) Plaintiffs allege that they were ultimately provided with "legally and constitutionally insufficient" notice – in the form of a telephone and facsimile message left after-hours at the office of one of plaintiffs' attorneys – that "an Order To Show Cause would be presented for signature to a justice on the following day in Riverhead." (*Id.* ¶ 59.)

Plaintiffs allege that because they were not provided with proper notice of the State Court Actions, they did not appear to oppose the relief sought by the Town and Town Board. (*Id.* ¶

63.)  Accordingly, on April 1, 2008, Acting New York State Supreme Court Justice Gary J. Weber issued three Orders to Show Cause why: (1) the Town should not be granted preliminary injunctions pursuant to CPLR Article 63, the Town Law, and the Town Code that prohibited plaintiffs from occupying or otherwise using the properties located at 1104, 1110, and 1130 North Sea Road, and (2) why the court should not declare that plaintiffs' use of these North Sea Road properties violated certain provisions of the Town Code (the "Orders to Show Cause"). (*See* Decl. of Michael S. Cohen, Esq., dated Jan. 21, 2011 ("Cohen Decl."), Exs. D, F, H.) Justice Weber simultaneously issued temporary restraining orders (the "TROs") that prohibited plaintiffs from using or occupying these three North Sea Road properties until defendants' motions for preliminary injunctions were decided.  (*Id.*)  Thereafter, on July 28, 2008, the TROs were extended by order of New York State Supreme Court Justice Arthur G. Pitts (the "Extension Orders").  (Cohen Decl., Exs. E, G, I.)[2]

Plaintiffs allege that defendants "deliberately and intentionally provid[ed] false information to the state court"[3] and "utiliz[ed] and abus[ed] a New York State Rule of Civil Procedure" in order to obtain the TROs.  (*See* Am. Compl. ¶ 65.)  According to plaintiffs, defendants' conduct constituted "the unlawful and unconstitutional seizure of Plaintiffs' property

---

[2]      The Orders to Show Cause, TROs, and Extension Orders, which are attached as Exhibits D through I to the Cohen Declaration, are properly before the Court on this motion to dismiss as they are incorporated by reference in the Amended Complaint.  *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d. Cir. 2002).

[3]      Plaintiffs allege that defendants provided false information regarding the number of bedrooms permitted in the properties' certificates of occupancy, the condition of fireplaces installed after the issuance of the certificates of occupancy, the approval for permits for certain basement "build out" projects, and the absence of functioning smoke detectors.  (Am. Compl. ¶ 70.)

for a serious and significant amount of time, . . . in a manner akin to a pre-judgment attachment of the real property without any adequate prior notice and opportunity to be heard." (*Id.*) Plaintiffs further allege that defendants "failed to conduct any prompt post-deprivation full evidentiary hearing." (*Id.* ¶ 66.) As a result, the North Sea Road properties could not be rented or occupied during the spring, summer, or fall of 2008 or any part of 2009 (even though such extended periods of non-occupancy violated the terms of the properties' mortgage contracts), and were subject to vandalism and mold growth in the basement. (*Id.* ¶ 68.)

On or about September 10, 2008, the Town allegedly "sent a slew of fire marshals[,] Code enforcement officers, police officers and a Building Inspector onto the properties without probable cause, without a search warrant and without consent of the property owners . . . ." (*Id.* ¶ 69.) Although plaintiffs' counsel demanded that these individuals vacate the premises, they refused because, "according to LOMBARDO, no one had a right to even be on the property at all." (*Id.*)

## IV.    *The Amended Complaint*

The Amended Complaint asserts six causes of action. Count I seeks damages for alleged violations of plaintiffs' Fourth and Fourteenth Amendment rights stemming from: (1) the September 10, 2008 search of the North Sea Road properties (*id.* ¶ 75), and (2) plaintiffs' allegation that "Defendants effectively continued the initial 'seizure' [of] all use and occupancy of the real properties and all use [of] income-generating properties, through what is tantamount to unconstitutional *ex parte* writs of attachment being sought by a municipality and granted by a state court judge, without notice and opportunity to be heard." (*Id.* ¶ 76.) According to plaintiffs, the Town and Town Board deprived plaintiffs of their rights under valid certificates of

occupancy "without providing any sort of speedy post-deprivation full evidentiary hearing process." (*Id.* ¶ 77.)

Count II seeks damages for defendants' alleged violation of plaintiffs' First Amendment rights by retaliating against MacPherson because he filed the Initial Action. (*Id.* ¶ 83.) Count II also contains an allegation that plaintiffs "have been treated differently from other persons who are similarly situated in numerous respects." (*Id.* ¶ 91.)

Count III seeks damages based upon defendants' alleged violation of plaintiffs' Fourth, Fifth, and Fourteenth Amendment rights by: (1) utilizing "the same town attorneys to both prosecute these Plaintiffs in the Justice Court and to also pursue state civil action," (*id.* ¶ 94), (2) "fail[ing] to fulfill their investigative and administrative functions by adequately reviewing the TOWN's Building Department files before requesting [a] search warrant and making specious false statements in court papers," (*id.* ¶ 95), and (3) the Town Board and Lombardo's conduct "deliberately delayed the state judicial process," (*id.* ¶ 96).

Count IV alleges that defendants violated plaintiffs' Fourth, Fifth and Fourteenth Amendment rights by failing to "train and supervise their governmental employees not to violate civil rights of Plaintiffs and persons in Plaintiffs' situation." (*Id.* ¶ 100.) Plaintiffs seek damages for the resulting violations of their constitutional rights.

In Count V, plaintiffs seek a declaration that "Defendants' scheme of deprivation of the rights granted by a 'Certificate of Occupancy' without a reasonably prompt post-deprivation full evidentiary hearing" is unconstitutional. (*Id.* ¶¶ 113, 116.) Plaintiffs also seek a declaration that the Town and Town Board violated the Constitution through its "custom, policy and use of New York State civil procedures for the purpose of seeking *ex parte* TROs and preliminary

injunctions, without adequate notice to the property owner and a full and fair opportunity to be heard . . . ."  (*Id.* ¶ 114.)  Finally, plaintiffs seek a declaration that the Town and Town Board's "legislation and manner of seizing all use of a residential property without providing for a full and fair post-seizure evidentiary hearing within 15 days" violates the Constitution.  (*Id.* ¶ 115.)

Count VI seeks injunctive relief that would require defendants to provide training to its code and law enforcement officers, and to submit to monitoring by the New York State Attorney General's Office.  (*Id.* ¶¶ 118-19.)

For the reasons indicated below, defendants' motion is granted in part and denied in part.

## DISCUSSION

### I.   Legal Standard

#### A.   Rule 12(b)(1)

A case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a 'plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" *MacPherson v. State Street Bank & Trust Co.*, 452 F. Supp. 2d 133, 136 (E.D.N.Y. 2006) (quoting *Makarova*, 201 F.3d at 113); *see also Tomaino v. United States*, 2010 WL 1005896, at *1 (E.D.N.Y. Mar. 16, 2010).

#### B.   Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court

has recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Twombly*, 550 U.S. at 561 (quoting *Conley*, 355 U.S. at 45-46). Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), the Supreme Court provided further guidance, setting forth a two-pronged approach for courts deciding a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual assumptions." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id*. at 1949 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see also Ortiz v. City of New York*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010) ("[A] complaint must contain factual allegations to support the legal conclusions and the factual allegations must plausibly give rise to an entitlement of relief.") (internal quotation marks omitted).

## II. *Plaintiffs' Due Process Claims Alleged in Count I and Plaintiffs' Request for Declaratory Relief in Count V are Dismissed*

### A. *Pre-Deprivation Due Process*

In Count I, plaintiffs allege that defendants seized their real property by using "what is tantamount to unconstitutional *ex parte* writs of attachment," which defendants sought and obtained "without [providing plaintiffs with] notice and [an] opportunity to be heard . . . ." (Am. Compl. ¶ 76.) To the extent plaintiffs challenge the state court's orders granting the *ex parte* TROs or the manner in which defendants obtained both the *ex parte* TROs and the Extension

Orders, such claims are barred by the *Rooker-Feldman* doctrine for the reasons discussed at length in the Court's prior Memorandum & Order. (*See* Sept. 2010 Decision at 12-17.)[4]

**B.      Post-Deprivation Due Process**

Plaintiffs also allege that defendants "effectively deprived Plaintiffs of [their] rights . . . under each valid 'Certificate of Occupancy' [for the North Sea Road properties] without providing any sort of speedy post-deprivation full evidentiary hearing process that was capable of being completed in a sufficiently timely manner and would afford Plaintiffs a meaningful right of cross-examination of the municipal witnesses against them." (Am. Compl. ¶ 77.) According to plaintiff, the Town and Town Board have engaged in a "pattern and practice of not affording property owners a meaningful and speedy post-deprivation full evidentiary hearing [ ] whenever a TOWN-issued Certificate of Occupancy is suspended . . . ." (*Id.* ¶ 78; *see also id.* ¶¶ 112-16 (Count V).)

Defendants argue that this claim must be dismissed because plaintiffs have failed to identify a constitutionally-protected property right. Specifically, defendants assert that "there is no cognizable property interest in a certificate of occupancy." (Defs.' Mem. at 6.) The Court need not resolve this question because, despite plaintiffs' allegation that defendants "effectively

_____

[4]      In their legal memorandum, plaintiffs argue that defendants commenced the State Court Actions based upon information garnered from "unconstitutional searches," by which plaintiffs mean searches of the North Sea Road properties that were conducted between December 2007 (when the complaint in the Initial Action was served upon Frano) and April 2008 (when the TROs were issued) pursuant to "defective search warrants." (*See* Pls.' Opp'n at 5-8.) These allegations are not pled in the Amended Complaint and, as such, are not properly before the Court. Even if they were pled, however, these allegations go to plaintiffs' alleged injury caused by the state court's issuance of the TROs and the manner in which defendants obtained the TROs. The Court has already determined that these claims are barred by the *Rooker-Feldman* doctrine. (Sept. 2010 Decision at 10-17.)

11

deprived" them of their rights "under" the certificates of occupancy for the North Sea Road properties, it is clear that plaintiffs have not alleged that any of those certificates of occupancy were actually suspended or revoked.

The Amended Complaint can, however, be read more broadly as asserting a due process claim based on plaintiffs' inherent right to use and enjoy their real property. *See Krimstock v. Kelly*, 306 F.3d 40, 61 (2d Cir. 2002) ("The deprivation of real or personal property involves substantial due process interests.") (citing *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53-54 (1993) ("Good's right to maintain control over his home, and to be free from governmental interference, is a private interest of historic and continuing importance.")).

The exact nature of the alleged deprivation of plaintiffs' property rights, as set forth in Counts I and V, is difficult to discern. After reviewing plaintiffs' legal memorandum, it appears that plaintiffs have attempted to allege two separate deprivations. First, plaintiffs assert that defendants unilaterally decided to prosecute plaintiffs' alleged code violations in state court – as opposed to some undefined "municipal administrative" agency or judicial forum – because they knew that an action commenced in the state court system would result in an "exceptionally long [process], given the crowded dockets in Suffolk County." (*See* Pls.' Opp'n at 12; Am. Compl. ¶ 76 (alleging that defendants obtained the *ex parte* TROs "without [providing plaintiffs with] any constitutional alternative).) Plaintiffs have not, however, cited any legal authority that would support the proposition that they – as landowners alleged to be in violation of the Town Code – have any right (constitutional or otherwise) to choose or provide input as to the choice of a forum in which their Town Code violations are adjudicated. It would seem that if plaintiffs believe that

the Town has brought an action against them in an improper forum, that is a procedural matter that should be addressed in the State Court Actions.

Second, plaintiffs allege that defendants deprived them of their property rights "without providing any sort of speedy post-deprivation full evidentiary hearing process that was capable of being completed in a sufficiently timely manner." (Am. Compl. ¶ 77.) The Court presumes this is a reference to the length of time the State Court Actions have been pending without resolution. (*See* Pls.' Opp'n at 11 ("Such a State Enforcement Action process is inadequate . . . The lengthy delay makes it unconstitutional."); *see also id.* at 15.) Plaintiffs cite several cases as support for the proposition that a municipality's failure to provide an adequate post-deprivation hearing violates property owners' due process rights. (*See id.*) Those cases are distinguishable, however, because they all deal with plaintiffs who were not afforded any pre-deprivation due process. *See Kuck v. Danaher*, 600 F.3d 159, 161-62 (2d Cir. 2010) (plaintiff's renewal application for a firearm permit was denied and plaintiff asserted that defendants unnecessarily and deliberately prolonged the appeal); *Spinelli v. City of New York*, 579 F.3d 160, 164, 170 (2d Cir. 2009) (defendant confiscated plaintiff's firearms inventory and suspended her dealer's license; defendant's failure to hold a pre-deprivation hearing was justified based upon the existence of "exigent circumstances" but defendant violated plaintiff's due process rights by denying plaintiff an adequate post-deprivation hearing); *Krimstock*, 306 F.3d at 48 (plaintiffs' motor vehicles were seized pursuant to civil forfeiture laws at the time of their arrests and held *pendente lite*; "It is this intermediate deprivation . . . without any prompt hearing before a neutral factfinder, that we deem constitutionally infirm.")

Here, by contrast, plaintiffs were afforded some notice and opportunity to be heard before the TROs and Extension Orders were issued (although, admittedly, plaintiffs challenge the sufficiency of that notice). Moreover, plaintiffs have a variety of procedural mechanisms at their disposal in the state court system that could be used to reargue the grounds supporting the issuance of the TROs (CPLR 2221), appeal the issuance of the TROs and Extension Orders (CPLR Article 55), or compel the presiding justice in the State Court Actions to render a decision and judgment on any pending applications (an application for a writ of mandamus pursuant to CPLR Article 78). Plaintiffs have failed to articulate why these avenues are insufficient to address their concerns. Moreover, plaintiffs have failed to provide any factual or legal support for their assertion that "[d]efendants should have offered Plaintiffs a meaningful opportunity insofar as affording a municipal hearing of some sort before using the State Court process to [effectively] suspend a Certificate of Occupancy." (Pls.' Opp'n at 15.)

Accordingly, plaintiffs' due process claims, as alleged in paragraphs 76-78 of Count I and Count V of the Amended Complaint, are dismissed.

### III. Defendants' Motion to Dismiss Plaintiffs' Alleged Fourth Amendment Violation in Count I is Denied

Plaintiffs allege that on September 10, 2008, "the TOWN sent a slew of fire marshals[,] Code enforcement officers, police officers and a Building Inspector onto the properties without probable cause, without a search warrant and without consent of the property owners, all of whom refused to leave when it was demanded." (Am. Compl. ¶ 69.) Plaintiffs assert that this warrantless search violated their Fourth Amendment rights. (*Id.* ¶ 75.)

"Searches for administrative purposes, like searches for evidence of a crime, are encompassed by the Fourth Amendment." *Mangino v. Inc. Vill. of Patchogue*, 739 F. Supp. 2d 205, 236 (E.D.N.Y. 2010). Pursuant to the Fourth Amendment, "'except in certain carefully defined classes of cases, a search of private property without proper consent is "unreasonable" unless it has been authorized by a valid search warrant.'" *Id.* (quoting *Camara v. Mun. Court of City & Cnty. of San Francisco*, 387 U.S. 523, 528-29 (1965)); *see also Shapiro v. City of Glen Cove*, 2005 WL 1076292, at *13 (E.D.N.Y. May 5, 2005) ("A warrantless inspection of a private dwelling by a municipal administrative officer without the consent of the owner is generally unreasonable absent specifically defined circumstances . . . .").

Defendants assert that the TROs "explicitly grant the Town enforcement officials the right to 'determine[ ]' that the premises are 'safe, secure and in full compliance with the Town and State Codes,' thus clearly authorizing inspections without requiring a search warrant in order to make such determinations." (Defs.' Mem. at 10.) The Court disagrees. The TRO language upon which defendants rely states as follows:

> Upon [sic] such determination by the Court that the subject premises are safe, secure and in full compliance with Town and State Codes, defendants are enjoined from using or occupying the premises as a rental that does not comply with the provisions of the Town Code.

(Cohen Decl., Ex. D at 3; *see also id.*, Exs. F at 3 & H at 3.) The TRO does not explicitly authorize the Town or its employees to enter or search the North Sea Road properties. Thus, *United States v. Rudaj*, a case upon which defendants rely for the proposition that the TROs "may function as [ ] *de facto* search warrant[s]" is readily distinguishable. *Rudaj*, 2005 U.S. Dist. LEXIS 22093, at *2, 4 (S.D.N.Y. Oct. 4, 2005) (noting that a post-indictment restraining

order, which explicitly permitted searches of specific areas of the defendant's business, "functioned essentially as a search warrant").  The TROs did not serve as "*de facto* search warrant[s]."  (*See* Reply Mem. at 6.)

Defendants also argue that plaintiffs, "as non-occupant, absentee landlords of the properties subject to the search alleged in the First Amended Complaint, have no legal standing to challenge a search of their properties."  (*Id.*)  "To have standing to object to an entry and search of a home under the Fourth Amendment, a plaintiff must show that he had a legitimate expectation of privacy in the place searched."  *Mangino*, 739 F. Supp. 2d at 233 (internal quotation marks omitted).  "This inquiry involves two distinct questions: first, whether the individual has a subjective expectation of privacy; and second, whether that expectation of privacy is one that society accepts as reasonable."  *United States v. Hamilton*, 538 F.3d 162, 167 (2d Cir. 2008).

The question of whether plaintiffs had a legitimate expectation of privacy in the North Sea Road properties at the time of the September 2008 search is a fact-intensive question that cannot be resolved on a Rule 12(b)(6) motion to dismiss.  *See Palmieri v. Lynch*, 392 F.3d 73, 81-83 (2d Cir. 2004) (reviewing factual record upon which district court relied, which included evidence that plaintiff erected a fence and posted "No Trespassing signs, and that the portion of the property was exposed to public view); *Shapiro*, 2005 WL 1076292 at **9-13 (reviewing detailed factual record to determine whether plaintiff had an expectation of privacy).

Defendants also argue that "'[a] landlord generally does not have a reasonable expectation of privacy with respect to property that he has rented to a tenant and that is occupied by the tenant.'" (Reply Mem. at 6 (alteration in the original) (quoting *Mangino*, 739 F. Supp. 2d

16

at 234).)  While a landlord's expectation of privacy in his tenants' apartments may be diminished when the tenants live in those apartments, *see Mangino*, 739 F. Supp. 2d at 234 (collecting cases), plaintiffs have clearly alleged that the North Sea Road properties were all vacant at the time of the September 2008 search (*see* Am. Compl. ¶¶ 53, 54, 56).

Accordingly, defendants' motion to dismiss plaintiffs' Fourth Amendment unreasonable search claim, as alleged in paragraph 75 of the Amended Complaint, is denied.

## IV.  *Plaintiffs' First Amendment Retaliation Claim*

Plaintiffs contend that defendants retaliated against them as a consequence of MacPherson's exercising his First Amendment right to commence the Initial Action.  (Am. Compl. ¶ 83.)  In the September 2010 Decision, the Court dismissed plaintiffs' First Amendment retaliation claim because plaintiffs failed to allege that MacPherson's First Amendment rights were "either silenced or chilled – *i.e.,* that his rights to speech [were] actually violated" as a result of defendants' alleged retaliatory commencement of the State Court Actions.  (Sept. 2010 Decision at 24.)

Plaintiffs contend that the Court applied the wrong standard in analyzing whether they adequately pled a First Amendment retaliation claim.[5]  In the September 2010 Decision, the Court set forth the elements of a First Amendment retaliation claim as follows:

> To establish a *prima facie* case of retaliation under Section 1983, a
> plaintiff must demonstrate that: "(1) he has an interest protected by

---

[5]     Plaintiffs note that they filed the Amended Complaint "without bothering to request reconsideration" of that portion of the September 2010 Decision that dismissed their First Amendment retaliation claim.  (Pls.' Opp'n at 2.)  The Court does not entertain plaintiffs' arguments on this point in the context of a reconsideration of the September 2010 Decision, but in the interest of determining the proper framework for its legal analysis of the First Amendment retaliation claim pled in the Amended Complaint.

the First Amendment; (2) defendants' actions were motivated or
substantially caused by his exercise of that right; and (3) defendants'
actions effectively chilled the exercise of his First Amendment right."
*Kuck v. Danaher*, 600 F.3d 159, 168 (2d Cir. 2010) (quoting *Curley
v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)); *Butler v. City of
Batavia*, 2009 WL 910194, at *1 (2d Cir. Apr. 6, 2009) (same);
*Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir. 1998) (same).

(Sept. 2010 Decision at 21.)  In a footnote, the Court noted that:

> The Second Circuit has "described the elements of a First
> Amendment retaliation claim in several ways depending on the
> factual context." *Williams v. Town of Greenburgh*, 535 F.3d 71, 76
> (2d Cir. 2008).  The elements set forth in *Curley v. Village of Suffern*,
> 268 F.3d 65, 73 (2d Cir. 2001), apply to suits, such as this one,
> brought by private citizens against public officials. *See Williams*, 535
> F.3d at 76 (comparing the *Curley* standard with the *prima facie*
> requirements in cases brought by public employees and those brought
> in the "prison context").

(*Id.* at 21 n.9.)  In their motion papers filed in opposition to defendants' motion to dismiss the

original Complaint, plaintiffs acknowledged that they were required to allege that "the

defendants' action chilled the exercise of plaintiff's First Amendment right."  (*See* Pls.' Opp'n,

dated June 4, 2009, at 8 (citing *Curley*, 268 F.3d at 73).)  Plaintiffs now argue, however, that the

Court committed "an error" by relying on *Curley* to dismiss their retaliation claim.  (Pls.' Opp'n

at 4.)  Plaintiffs concede that "it is true that <u>one</u> of the ways that a First Amendment retaliation

plaintiff can prove his or her claim" is to demonstrate that the plaintiff's First Amendment rights

were chilled by the defendants' conduct.  (*Id.* at 2 (emphasis in the original).)  But, plaintiffs

continue, "another alternative way of proving a First Amendment retaliation claim is to prove

that a defendant has already taken an action that had already injured a plaintiff in some way

and/or has already transgressed one of plaintiff's constitutional rights in response to plaintiff's

exercise of a First Amendment right."  (*Id.* at 2-3.)  Plaintiffs argue that they have alleged that

they "suffered <u>actual injury</u>" in retaliation for commencing the Initial Action, i.e., the commencement of the State Court Actions and their monetary losses stemming from the denial of access to the North Sea Road properties. (*Id.* at 3, 5 (emphasis in the original).)

Plaintiffs cite *Gagliardi v. Village of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994) and *Gill v. Pidlypchak*, 389 F.3d 379 (2d Cir. 2004) as support for their position that their retaliation claims can survive a Rule 12(b)(6) motion to dismiss even without allegations that their First Amendment rights were actually chilled, so long as they have alleged that they suffered some other harm. (Pls.' Opp'n at 4.) After plaintiffs' opposition papers were filed, the Second Circuit rendered its decision in *Zherka v. Amicone*, 634 F.3d 642 (2d Cir. 2011). In that case, the Circuit acknowledged that "private citizens claiming retaliation for their criticism of public officials have been required to show that they suffered an 'actual chill' in their speech as a result." *Id.* at 645. The Circuit stated, however, that "in limited contexts, other forms of harm have been accepted in place of this 'actual chilling' requirement." *Id.* (citing *Gagliardi* and *Gill*). The Second Circuit ultimately determined that "[w]here concrete harm is alleged and specified," such as "[a]llegations of loss of business or some other tangible injury," a First Amendment retaliation claim brought by a private citizen against a public official can proceed. *Id.* at 646 (finding that "the presumed injury of New York's theory of *per se* defamation is inadequate"); *see also Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 371 n.17 (S.D.N.Y. 2011) (finding plaintiff's allegations of retaliatory denial of building permits and an unconditional variance were sufficient to meet the "other harm" standard of *Zherka*).

The Court finds the *Zherka* decision to be of particular importance to this case, but is hesitant to apply the principles set forth therein without the benefit of further briefing from the

parties as to its applicability to this case. Moreover, should the Court determine that plaintiffs have sufficiently alleged some "other harm," it will need to address whether that harm was caused by defendants' alleged conduct. While the parties extensively briefed the causation issue in connection with their motion to dismiss the original Complaint, they have not done so here – mostly because the Court focused on the lack of any allegations of a "chilling effect" in its September 2010 Decision. Thus, the Court wishes to afford the parties an opportunity to update their briefs regarding causation.

Therefore, the Court defers ruling on defendants' motion to dismiss plaintiffs' First Amendment retaliation claim in Count II pending the receipt of supplemental briefing by the parties. The parties are directed to submit a proposed briefing schedule within thirty days of the date of this Order.[6]

### V. Plaintiff's Due Process Claims Relating to the Town Attorney's Prosecution of the State Court Actions and Defendants' Failure to "Fulfill Their Investigative and Administrative Functions"

In Count III of the Complaint, plaintiffs allege that the Town Board and Lombardo "deliberately delayed" the State Court Actions by "repeatedly disobeying court orders to provide documents in the discovery phase, and to come to state court for court ordered conference, all with [the] intention of delaying Plaintiffs' ability to utilize the properties and generate income therefore . . . ." (Am. Compl. ¶ 96; *see also id.* ¶ 94.) Plaintiffs also allege that defendants have "failed to fulfill their investigative and administrative functions by adequately reviewing the

---

[6] Count II also alleges that plaintiffs "have been treated differently from other persons who are similarly situated in numerous respects." (Am. Compl. ¶ 91.) This claim is dismissed for the same reason that plaintiffs' identical equal protection claim in the original Complaint was dismissed: plaintiffs have failed to identify any similarly-situated comparators. (*See* Sept. 2010 Decision at 25-27.)

TOWN's Building Department files before requesting search warrant[s]," and alleges that defendants have made "specious false statements in court papers." (*Id.* ¶ 95.)[7]

To the extent these allegations are sufficient to state a claim for a due process violation, the Court finds that the *Younger* abstention doctrine precludes the Court from exercising jurisdiction over the matter. *See Younger v. Harris*, 401 U.S. 37 (1971); *Del Valle Hernandez v. U.S. Family Court of Bronx Cnty.*, 107 F.3d 2, at *1 (2d Cir. Jan. 7, 1997) (unpublished) (noting that pursuant to the *Younger* doctrine, a federal court should not "interfere with a state court"). "*Younger* abstention is mandatory when: (1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 75 (2d Cir. 2003).

Here, each of the three conditions set forth above are satisfied. First, as plaintiffs allege, the State Court Actions are ongoing. Second, "disputes concerning the ability of property owners to rent their property implicate important state interests." *MacPherson v. Town of Southampton*, 664 F. Supp. 2d 203, 213 (E.D.N.Y. 2009). As to the third element, plaintiffs have not demonstrated that their concerns regarding the Town Board and Lombardo's alleged delay of the State Court Actions could not be addressed by the state court itself. As the Circuit has noted, "the Supreme Court has placed the burden of establishing the inadequacy of state proceedings squarely on the party seeking to avoid abstention." *Spargo*, 351 F.3d at 77 (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435-36 (1982)). Because plaintiffs

---

[7]  The Court is, frankly, mystified as to plaintiffs' explanation why these claims are characterized as alleged violations of the Fourth or Fifth Amendments. (*See* Pls.' Opp'n at 17-18.) These claims are more properly analyzed as Fourteenth Amendment due process claims.

have failed to meet that burden here, the Court must abstain from addressing plaintiffs' concerns about the manner in which the Town Board and Lombardo allegedly affected the prosecution of the State Court Actions.

## VI.     *Plaintiff's Claims of Failure to Train and Supervise*

In Count IV of the Amended Complaint, plaintiffs allege that the Town and Town Board have "deliberately and intentionally failed to train and supervise their governmental employees not to violate [the] civil rights of Plaintiffs and persons in Plaintiffs' situation." (Am. Compl. ¶ 100.) "[A] claim of inadequate training will trigger municipal liability only where 'the failure to train amounts to deliberate indifference to the rights' of those with whom municipal employees will come into contact." *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). The Second Circuit has "discern[ed] three requirements that must be met before a municipality's failure to train or supervise constitutes deliberate indifference to the constitutional rights of citizens." *Id.* A plaintiff must show: (1) "that a policymaker knows 'to a moral certainty' that her employees will confront a given situation," (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or there is a history of employees mishandling the situation," and (3) "the wrong choice by the [municipal] employee will frequently cause the deprivation of a citizen's constitutional rights." *Id.* at 297-98.

Here, plaintiffs have alleged that defendants failed to train and supervise Town "code enforcement officers" to ensure that they properly investigated cases of suspected code violations. (Am. Compl. ¶¶ 101, 102, 105-07.) Plaintiffs further allege that defendants failed to train and supervise "employees in the Town Attorney's Office" to ensure that they did not

prosecute code violations that "lack[ed] legal sufficiency." (*See id.* ¶ 102.) Assuming *arguendo* that the first two elements have been met here, the Court finds that plaintiffs have failed to allege that any "wrong choice" made by Town code enforcement officers or employees of the Town Attorney's Office in this context would "frequently cause the deprivation of a citizen's constitutional rights." *See Walker*, 974 F.2d at 298. If a charged Town Code violation is investigated and prosecuted but is ultimately found to "lack legal sufficiency," the result would generally be a simple dismissal of the charge. While it is not beyond the realm of possibility that an unfounded investigation or prosecution of a meritless code violation charge could result in some type of constitutional deprivation (such as a malicious prosecution or, as plaintiffs attempt to allege here, the deprivation of their physical property without due process), plaintiffs have not alleged that such events resulted with any frequency.

Plaintiffs allege that in September 2007 "Fire Marshal Christian Hansen" admitted that he may have erred in issuing a certain code violation against one of the North Sea Road properties. (Am. Compl. ¶ 109.) Plaintiffs have not alleged, however, that Fire Marshal Hansen is a Town employee. In any event, the Court would not draw an inference of the Town's failure to train or supervise from this isolated incident because "'a simple recitation that there was a failure to train municipal employees,' buttressed only by the 'single incident alleged in a complaint' does not suffice to 'raise an inference of the existence of a custom or policy.'" *Rivera v. City of New York*, 2011 WL 5979210, at *4 (S.D.N.Y. Nov. 30, 2011) (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds, Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993)).

Accordingly, Count IV of the Amended Complaint is dismissed. Count VI of the Amended Complaint, which seeks injunctive relief requiring defendants to "provide training to all of its code and law enforcement officers" and to submit to the New York State Attorney General's Office for monitoring (*see* Am. Compl. ¶¶ 118, 119), is also dismissed.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss the Amended Complaint is granted in part and denied in part. That portion of defendants' motion seeking the dismissal of plaintiffs' Fourth Amendment unlawful search claim, as alleged in paragraph 75 of the Amended Complaint, is denied. The Court reserves decision as to that portion of defendants' motion that seeks dismissal of plaintiffs' First Amendment retaliation claim in Count II of the Amended Complaint pending the receipt of further briefing from the parties. Defendants' motion is granted in all other respects, and all other claims in the Amended Complaint are dismissed in their entirety.

**SO ORDERED.**

Dated: Central Islip, New York
      March 19, 2012                 /s/_____
                                         Denis R. Hurley
                                         Unites States District Judge