UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
DONALD MacPHERSON,
1104 NORTH SEA CO., INC., and
1110 NORTH SEA CO., INC.,

        Plaintiffs,                       MEMORANDUM AND ORDER
                                                        08 CV 4113 (DRH) (ARL)

        -against-

TOWN OF SOUTHAMPTON,
SOUTHAMPTON TOWN BOARD,
KAITLIN GRADY, DONALD KAUTH,
JOSEPH LOMBARDO and DOES 1-5,

        Defendants.
-------------------------------------------------------X

**APPEARANCES:**

**PATRICIA A. WEISS, ESQ.**
Attorney for Plaintiffs
Sag Harbor Shopping Cover
78 Main Street, Suite 14
P.O. Box 751
Sag Harbor, New York 11963-0019
By:    Patricia A. Weiss, Esq.

**NIXON PEABODY, LLP**
Attorney for Defendants
50 Jericho Quadrangle
Suite 300
Jericho, New York 11753
By:    Michael Stewart Cohen, Esq.

**HURLEY, Senior District Judge:**

        Plaintiffs Donald MacPherson ("MacPherson"), 1104 North Sea Co., Inc. ("1104 North Sea"), and 1110 North Sea Co., Inc. ("1110 North Sea") (collectively, "plaintiffs") commenced the present action against the Town of Southampton (the "Town"), Southampton Town Board (the "Town Board"), Kaitlin Grady ("Grady"), Donald Kauth ("Kauth"), and Joseph Lombardo

("Lombardo") (collectively, "defendants") challenging defendants' enforcement of various ordinances concerning residential rental properties and alleging that defendants retaliated against them because of MacPherson's exercise of his First Amendment rights. By Memorandum & Order dated September 7, 2010 (the "September 2010 Decision"), the Court dismissed a large portion of the original Complaint but granted plaintiffs leave to re-plead. Plaintiffs filed an Amended Complaint on December 7, 2010. By Memorandum & Order dated March 19, 2012 (the "March 2012 Decision") the Court granted in part and denied in part defendants' motion to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and (6). In that same decision, the Court reserved ruling on that portion of defendants' motion that sought the dismissal of plaintiffs' First Amendment retaliation claim and ordered supplemental briefing from the parties. The Court has received and reviewed that supplemental briefing and, for the reasons set forth below, that portion of defendants' Rule 12(b)(6) motion seeking the dismissal of plaintiffs' First Amendment retaliation claim is denied.

## BACKGROUND

The following facts are taken from the Amended Complaint and are presumed true for purposes of this motion.

Plaintiffs each own residential property in the Town, where MacPherson is a part-time resident. Four properties are referred to in the Amended Complaint: 1104 North Sea Road, 1106 North Sea Road, 1110 North Sea Road, and 1130 North Sea Road (the "North Sea Road properties"). The 1104 North Sea Road and 1110 North Sea Road properties are owned and operated by the 1104 North Sea and 1110 North Sea corporate entities. MacPherson is "associated" with all four properties "either as an owner, former owner, mortgagor, principal of

2

the corporate owner, and/or consultant to the legal owner." (Am. Compl. ¶ 52.) Grady is one of the Town's zoning code enforcement officers and Kauth is one of the Town's senior zoning code enforcement officers. Lombardo is one of the Town's attorneys.

## I.     *The Initial Action*

On August 22, 2007, MacPherson, along with two of his corporate entities that are not parties here, commenced a separate action before this Court, under docket number CV 07–3497, asserting claims under 42 U.S.C. § 1983 ("Section 1983") against the Town, the Town Board, and Stephen A. Frano, an individual that is not a party here (the "Initial Action"). The claims asserted in the Initial Action were premised upon the alleged unconstitutionality of the Town's seasonal rental permit law. On August 28, 2007, approximately one week after MacPherson commenced the Initial Action, the Town and Town Board "created a new Chapter 270 (Rental Properties) which was scheduled to become effective 30 days later and would be enforced beginning January 1, 2008." (*Id.* ¶ 34.) On October 6, 2007, MacPherson filed an Amended Complaint in the Initial Action that challenged the constitutionality of this newly promulgated seasonal rental permit law.

## II.    *The Alleged Retaliation*

Plaintiffs allege that shortly after the Amended Complaint was filed in the Initial Action, defendants began to engage in "a pattern of retaliation" against MacPherson. (*Id.* ¶ 39.) According to plaintiffs, Grady and Kauth learned of the Initial Action when their co-worker Frano was served with a summons and complaint. (*Id.* ¶ 40–41.) Thereafter, as early as December 2, 2007, Grady, Kauth, "and other enforcement officers employed by the [Town] began a series of repeated visits" to the North Sea Road properties and engaged in "a pattern of

3

intimidation of tenant-occupants" in order to "obtain judicial access" to these properties. (*Id.* ¶¶ 42, 46.) Plaintiffs allege that the Town Board learned of these investigations and was aware of MacPherson's association with the North Sea Road properties. (*See id.* ¶ 52.)

In December 2007, after conducting searches of the North Sea Road properties pursuant to search warrants, "GRADY and the TOWN learned that certain individuals were living in the finished basement areas" of these residences despite the fact that the basement areas had not been approved for bedroom use. (*Id.* ¶¶ 49, 50.) Although plaintiffs took immediate steps to have those individuals vacate the North Sea Road properties (*id.* ¶ 53), the Town and Town Board commenced civil actions against plaintiffs on March 31, 2008 in New York Supreme Court (the "State Court Actions"). (*See id.* ¶ 54.)

### III.     *The State Court Actions*

On March 31, 2008, the Town and Town Board (through Lombardo as a Town Attorney) "sought a temporary restraining order and preliminary injunction prohibiting the property owners and all others . . . from all future use and occupancy of the North Sea Road residences until the state action was determined . . . ." (*Id.* ¶ 55.)

Accordingly, on April 1, 2008, Acting New York State Supreme Court Justice Gary J. Weber issued temporary restraining orders (the "TROs") that prohibited plaintiffs from using or occupying these three North Sea Road properties until defendants' motions for preliminary injunctions were decided. (*Id.*)  Thereafter, on July 28, 2008, the TROs were extended by order of New York State Supreme Court Justice Arthur G. Pitts (the "Extension Orders"). (Decl. of

Michael S. Cohen, Esq., dated Jan. 21, 2011 ("Cohen Decl."), Exs. E, G, I.)[1]  As a result, the North Sea Road properties could not be rented or occupied during the spring, summer, or fall of 2008 or any part of 2009 (even though such extended periods of non-occupancy violated the terms of the properties' mortgage contracts), and were subject to vandalism and mold growth in the basement.  (*Id.* ¶ 68.)

On or about September 10, 2008, the Town allegedly "sent a slew of fire marshals[,] Code enforcement officers, police officers and a Building Inspector onto the properties without probable cause, without a search warrant and without consent of the property owners . . . ."  (*Id.* ¶ 69.)  Although plaintiffs' counsel demanded that these individuals vacate the premises, they refused because, "according to LOMBARDO, no one had a right to even be on the property at all."  (*Id.*)

## IV.     The March 2012 Decision

As noted above, defendants previously moved to dismiss all six counts pled in the Amended Complaint.  In the March 2012 Decision, the Court dismissed plaintiffs' due process claims, which were based on their allegation that defendants seized their real property by use of "unconstitutional *ex parte* writs of attachment" and failed to provide them with adequate post-deprivation process.  (*See* Mar. 2012 Decision at 10-14.)  The Court also dismissed plaintiffs' due process claims that stemmed from their allegations that the Town Attorney mishandled the prosecution of the State Court Actions and that defendants "failed to fulfill their investigative and

---

[1]     These documents are properly before the Court in the context of a Rule 12(b)(6) motion to dismiss because they are incorporated by reference in the Amended Complaint.  *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

administrative functions." (*Id.* at 20-22.) Plaintiffs' "failure to train" and "failure to supervise claims" were also dismissed. (*Id.* at 22-24.) The Court denied defendants' motion, however, as to plaintiffs' Fourth Amendment claims based upon Town enforcement officials' warrantless search of the North Sea Road properties in September 2008. (*Id.* at 14-17.)

The original Complaint contained a First Amendment retaliation claim, alleging that defendants retaliated against MacPherson based upon his commencement of the Initial Action. In the September 2010 Decision, the Court dismissed that claim based upon plaintiffs' failure to allege that MacPherson's First Amendment rights were "either silenced or chilled – i.e., that his rights to speech [were] actually violated" as a result of defendants' alleged retaliatory commencement of the State Court Actions. (Sept. 2010 Decision at 24.) Plaintiffs included a similar First Amendment retaliation claim in the Amended Complaint and asserted, in response to defendants' motion to dismiss the Amended Complaint, that they were not required to allege that their First Amendment rights were actually chilled, so long as they alleged that they suffered some other harm.

After defendants' motion to dismiss the Amended Complaint had been fully briefed and filed, the Second Circuit issued its decision in *Zherka v. Amicone*, 634 F.3d 642 (2d Cir. 2011). In that case, the Circuit acknowledged that while "private citizens claiming retaliation for their criticism of public officials have been required to show that they suffered an 'actual chill' in their speech as a result," "in limited contexts, other forms of harm have been accepted in place of this 'actual chilling' requirement." *Id.* at 645. In its March 2012 Decision, the Court found that *Zherka* was of particular importance to defendants' motion to dismiss plaintiffs' First Amendment retaliation claim, but declined to apply the principles of that decision until it

6

received supplemental briefing from the parties as to: (1) whether plaintiffs sufficiently alleged some "other harm" within the meaning of *Zherka*, and (2) whether that harm was caused by defendants' alleged conduct. (Mar. 2012 Decision at 19-20.)

## *DISCUSSION*

### I. *Legal Standard*

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Twombly*, 550 U.S. at 561 (quoting *Conley*, 355 U.S. at 45-46) (internal quotation marks omitted). Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

7

More recently, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court provided further guidance, setting forth a two-pronged approach for courts deciding a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see also Ortiz v. City of New York*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010) ("[A] complaint must contain factual allegations to support the legal conclusions and the factual allegations must plausibly give rise to an entitlement to relief.") (internal quotation marks omitted).

## II. Plaintiffs Have Adequately Pled a First Amendment Retaliation Claim

### A. Plaintiffs' Allegations of "Other Harm" are Sufficient

"In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws." *Friedl v. City of New York,* 210 F.3d 79, 85 (2d Cir.2000). In particular, "[t]he Second Circuit has recognized that 'a claim for relief may be stated under section 1983 if otherwise routine administrative decisions are made in retaliation for the exercise of constitutionally protected rights.'" *Chernoff v. City of New York,* 2009 WL 816474, at *5 (E.D.N.Y. Mar. 26, 2009) (quoting *Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir.1987)). To establish a *prima facie* case of retaliation under Section 1983, an individual must show that (1) they engaged in speech protected by the First Amendment;[2] (2) "persons acting under color of state law took adverse action against them in retaliation for that speech"; and (3) "the retaliation resulted in actual chilling of their exercise of their constitutional right to free speech." *Zherka,* 634 F.3d at 643 (internal citations and quotations omitted).

With respect to the third prong of the prima facie case, the Second Circuit made clear in *Zherka* that while "private citizens claiming retaliation for their criticism of public officials have [generally] been required to show that they suffered an 'actual chill' in their speech as a result[,] . . . in limited contexts, other forms of harm have been accepted in place of this 'actual chilling requirement.'" *Id.* at 645 (citing *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002) (retaliatory revocation of plaintiff's building permit); *Gagliardi v.*

---

[2] In its September 2010 Decision, the Court concluded that plaintiffs "have adequately alleged that MacPherson engaged in activity protected by the First Amendment by commencing the Initial Action." (Sept. 2010 Decision at 22.)

9

*Vill. of Pawling*, 18 F.3d 188, 195 (2d Cir. 1994) (retaliatory failure to enforce zoning laws)); *see also Vaher v. Town of Orangetown*, 2013 WL 42415, at *17 (S.D.N.Y. Jan. 2, 2013) ("Thus, while a plaintiff asserting a First Amendment retaliation claim must allege some sort of harm, it is not necessary for that harm to be a chilling of speech in every case.")

Here, plaintiffs allege that after the commencement of the Initial Action, defendants "began a series of repeated visits" to the North Sea Road properties and engaged in "a pattern of intimidation of tenant-occupants" in order to "obtain judicial access" to these properties. (Am. Compl. ¶¶ 42, 46.) In March 2008, based in part upon information gleaned from these visits, defendants sought and obtained TROs that "prohibited these Plaintiffs from using or occupying the residences and required that the residences be locked with the windows sealed and entrances barricaded." (*Id.* at ¶¶ 55, 63.) As a result, "the North Sea residences could not be rented or occupied in the spring, summer and fall of 2008, nor any part of 2009," "the houses we subjected to vandalism," and "at least one house has been subjected to a growth of mold [ ] as a result of the humid conditions." (*Id.* at ¶ 68.) Finally, plaintiffs allege that the North Sea Road properties were subjected to a warrantless search in September 2008 in violation of the Fourth Amendment rights.[3] (*Id.* ¶¶ 69, 75.) The Court finds these allegations sufficient to satisfy the "other harm" requirement. *See Vaher*, 2013 WL 42415, at *17 (finding that "economic and pecuniary loss" was sufficient to meet the "some sort of harm" standard of *Zherka*).[4]

---

[3] As discussed above, in its March 2012 Decision, the Court denied defendants' motion to dismiss plaintiffs' claim that this warrantless search violated their Fourth Amendment rights. (Mar. 2012 Decision at 14-17.)

[4] Defendants argue that "the extent of the harm suffered by plaintiffs was entirely within the plaintiffs' control [because] [u]nder the terms of the TROs the North Sea Road properties were to remain unoccupied only for so long as plaintiffs failed to bring the properties into

10

### B. Plaintiffs Have Adequately Pled a Causal Connection Between Their Protected First Amendment Activity and the Alleged Retaliatory Conduct

Plaintiffs allege defendants "retaliated against [MacPherson] and his corporations" based upon his commencement of the Initial Action. (Am. Compl. ¶ 83.) The "ultimate question of retaliation involves a defendant's motive and intent, both difficult to plead with specificity in a complaint." *Dougherty,* 282 F.3d at 91. A plaintiff asserts a viable First Amendment retaliation claim by alleging "facts from which a retaliatory intent on the part of the defendants reasonably may be inferred." *Id.* Such facts could include a temporal proximity between the protected activity and the alleged retaliatory action. *See Colon v. Coughlin,* 58 F.3d 865, 872–73 (2d Cir.1995).

Defendants argue that the "seven-month lapse between [ ] MacPherson's filing of the Initial Action [on August 22, 2007] and the commencement of the [State Court] Actions [on March 31, 2008] mandates the dismissal of the First Amendment retaliation claim." (*See* Defs.' Mem. at 4.) The Court disagrees, however, that this is the appropriate time-frame to consider in determining whether there was a closeness in time between MacPherson's protected activity and the alleged retaliation sufficient to support an inference of causation. Plaintiffs allege that the Initial Action was filed on August 22, 2007 and that an amended complaint in that action was filed on October 6, 2007. (Am. Compl. ¶ 37.) Less than two months later, on December 2, 2007, defendants began to engage in "a pattern of retaliation" against MacPherson that started with "a

---

compliance with the Town's zoning codes." (Defs.' Mem. at 8.) To the contrary, however, the TROs provided that the North Sea Road properties could not be accessed or used until a determination was made by the court that "the subject premises are safe, secure and in full compliance with Town and State Codes." (*See, e.g.*, Cohen Decl., Ex. D at 3.) Thus, it was not simply a matter of plaintiffs bringing the properties into compliance with applicable code – they were required to wait for a judicial determination to that effect.

series of repeated visits" to the North Sea Road properties made for the purpose of harassing tenants. (*Id.* ¶ 39, 42, 46.) Based on information obtained during these visits, the Town and Town Board passed resolutions in February 2008 that authorized the commencement of the State Court Actions. (*Id.* ¶ 52.) One month later, in March 2008, the State Court Actions were commenced, which led to the issuance of the TROs that barred plaintiffs' use of the North Sea Road properties.

Thus, less than four months after the Initial Action was commenced (and less than two months after the amended complaint was filed in the Initial Action), defendants set into motion an alleged chain of events that ultimately resulted in economic harm to plaintiffs in the form of the loss of use of the North Sea Road properties. The Court finds that plaintiffs have sufficiently alleged a causal connection that supports their First Amendment retaliation claim. *See Burkybile v. Bd. of Educ. of Hastings-on-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 314 (2d Cir. 2005) ("This Court has not established a specific delay between protected activity and adverse employment action that defeats an inference of causation."); *Gormon-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001) (concluding that there is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship") (internal quotation marks omitted).

## *CONCLUSION*

For the reasons set forth above, defendants' motion to dismiss the First Amendment retaliation claim as pled in Count II of the Amended Complaint is denied. The parties are directed to contact Magistrate Judge Lindsay within fifteen days of the date of this Order to schedule a status conference.

**SO ORDERED.**

Dated: Central Islip, New York
      May 1, 2013                                  /s/
                                                                              Denis R. Hurley
                                                                              Unites States District Judge